[Crim. No. 15779.   Second Dist., Div. Four.   June 5, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. NORMAN WALKER, JR., Defendant and Appellant.

Frank P. Rosen, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Arthur B. Rosenfeld, Deputy Attorney General, for Plaintiff and Respondent.

FILES, P. J.—Following a court trial, defendant was convicted of possession of marijuana for sale (Health & Saf. Code, § 11530.5), possession of a restricted dangerous drug for sale (Health & Saf. Code, § 11911) and violation of the Dangerous Weapons' Control Law (Pen. Code, § 12021). He was sentenced to state prison for the term prescribed by law on each count, subject to reconsideration under Penal Code section 1168. He appeals from the judgment, contending that evidence was admitted which was obtained as the result of an illegal search and seizure and that the evidence is insufficient to sustain the conviction on the narcotics counts. Neither contention finds support in the record.

On February 18, 1968, Officer Walter Kainz of the Los Angeles Police Department observed a 1963 Buick Riviera automobile with an inoperative right brake light traveling east on Florence. The car was driven by Sylvester Chambers and defendant was seated next to him. After turning on his red light and sounding his horn, Officer Kainz observed Chambers look in the rearview mirror and defendant turn and look back at him.

The car continued for approximately two and one-half blocks without slowing, and then made a sudden right turn. Officer Kainz sounded his siren. Again, both occupants' of the Buick appeared to look back at the police cruiser. The car continued south for another two blocks. During this period, the officer observed defendant lean forward and extend his arms as if placing something in the glove compartment. The Buick finally stopped on Fifth Avenue between 74th and 75th Streets.

Officer Kainz asked Chambers for his driver's license. He

did not have one and was unable to produce any other identification. Chambers was then placed under arrest pursuant to section 40302, subdivision (a), of the Vehicle Code.[1]

At this time, the officer noticed that there were scratches and pry marks near the ignition and there was a single new key in the ignition. The glove compartment looked as if it had been pried open. There was no visible registration card in the car, and Chambers was asked if he knew whose car it was. He replied that he did not.

Proceeding to the passenger's side of the car, Officer Kainz asked defendant if he knew who owned the car and defendant replied that he was the owner. In an effort to determine the owner of the car, Officer Kainz radioed headquarters. The response was that the vehicle was registered to another party, but there was no record of its having been reported stolen.

Defendant was asked for identification. When he produced it, the officer noticed what appeared to be a large amount of money in his wallet. He gave the officer permission to count the money and there turned out to be $214. When asked what he had placed in the glove compartment prior to stopping, defendant became very nervous, started to tremble and replied, " 'Nothing.' ".

Defendant was then asked for the registration card. He responded that he had just purchased the car and the registration was in the glove compartment. When Officer Kainz made a motion towards the glove compartment defendant told him that he could not open it legally. Then, in the officer's words, "I looked in the glove box to see if the registration was there and, also, to see if there were any weapons. . . ." Inside, he found two revolvers. Since there had been numerous robberies in the area involving the use of handguns and defendant had a large amount of cash on his person, Officer Kainz placed defendant and Chambers under arrest for robbery. He had no specific robbery in mind.

The officer then searched the rest of the car. On the rear floorboard, he found a spent cartridge. In the trunk, under the spare tire, he found a shopping bag which contained 19 cellophane bags containing a green, leafy substance resembling marijuana. Subsequent analysis revealed that the 19

---

[1]Vehicle Code section 40302 (as it read prior to the 1968 amendments):

"Whenever any person is arrested for any violation of this code, not declared to be a felony, the arrested person shall be taken without unnecessary delay before a magistrate . . .

(a) When the person arrested fails to exhibit his driver's license or other satisfactory evidence of his identity. . . ."

bags contained 332 grams of marijuana. A 20th cellophane bag contained 72 orange capsules containing a powder later analyzed as secobarbital, a barbituric acid derivative. The bag also contained 20 white tablets found to contain amphetamine.

Defendant disclaimed knowledge of the contraband. He testified that he had purchased the vehicle three weeks before, had been in the trunk only once and had subsequently lost the key to the trunk. He said that the key was found in his left back pants pocket when he was searched. Officer Chavez, who participated in a ''skin search'' of defendant when he was booked, testified that nothing was found in defendant's pants pockets but, upon defendant's removing his underwear, the key fell to the floor.

■ The defective taillight justified stopping the vehicle for the purpose of warning or citing the operator. (Veh. Code, § 24603.) The operator's lack of a license, and his inability to produce identification, made his arrest necessary. (Veh. Code, § 40302.)

■ At that point the officers were faced with the problem of what to do about the vehicle which was about to be left on the street when the operator was taken away in custody. The operator said he didn't know the vehicle's ownership, the passenger claimed ownership, and the registration was in an unknown third person. The conduct of both men suggested consciousness of guilt of something. The passenger said the registration card was in the glove compartment but he didn't want the officer to look there. The law required that the card be in the vehicle (Veh. Code, § 4454) and that it be produced for examination upon the demand of a peace officer (Veh. Code, § 4462).

The circumstances called for further investigation of the ownership of the vehicle. (See *People* v. *Upton* (1968) 257 Cal.App.2d 677, 683 [65 Cal.Rptr. 103] ; *People* v. *Galceran* (1960) 178 Cal.App.2d 312, 316 [2 Cal.Rptr. 901].) For his own protection the officer was justified in opening the glove compartment himself, rather than to risk the possibility that defendant would pull a weapon out of it. (See *People* v. *Mandola* (1967) 249 Cal.App.2d 599, 602-603 [57 Cal.Rptr. 737].)

■ When the glove compartment was opened the revolvers were in plain view. Carrying such weapons concealed in a motor vehicle was prima facie a violation of Penal Code section 12025.[2] Having in mind that defendant had claimed

---

[2]Penal Code section 12025: ''Except as otherwise provided in this chapter, any person who carries concealed upon his person or concealed

ownership of the vehicle, that he had been seen to make a movement towards the glove compartment as the officers approached, and that he had objected to the officer's looking for the registration card, there was ample cause to believe that defendant was responsible for the revolvers.

■ Officer Kainz decided that defendant should be arrested for robbery, and so informed him. It is unnecessary to determine whether there was probable cause to suspect defendant of robbery. His possession of the concealed weapons furnished solid ground for an immediate arrest, the legality of which is not disturbed by the officer's having in mind a more serious offense which was suggested by defendant's possession of the firearms. (See *People* v. *Woods* (1966) 239 Cal. App.2d 697, 702 [49 Cal.Rptr. 266].)[3]

■ Following a lawful arrest for a crime involving firearms it was appropriate to make a search of the other parts of the car for other guns and ammunition. The drugs found in the trunk, though not the object of the search, could not be overlooked, and were properly seized. (*People* v. *Jackson* (1966) 241 Cal.App.2d 189 [50 Cal.Rptr. 437].)

■ Once the admissibility of the evidence is established, the sufficiency of the proof requires little discussion. Defendant had owned the vehicle for three weeks. It is hardly probable that the former owner would have left either the guns or the drugs in the car, or that defendant would have failed to find them if they had been abandoned there. Defendant's apparent effort to hide his key to the trunk is additional evidence of his knowledge of the presence of contraband. The quantity of marijuana found, and the manner of packaging, supports the inference that it was possessed for sale. Upon this evidence the finding of the trial court on the factual issues is conclusive here. (See *People* v. *Hills* (1947) 30 Cal. 2d 694, 701 [185 P.2d 11].)

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.

---

within any vehicle which is under his control or direction any pistol, revolver, or other firearm capable of being concealed upon the person without having a license to carry such firearm as provided in this chapter is guilty of a misdemeanor, and if he has been convicted previously of any felony or of any crime made punishable by this chapter, is guilty of a felony.
"  .    .    .    .    .    .    .    .    .    .    ."

[3]Disapproved on an unrelated point in *People* v. *Doherty* (1967) 67 Cal.2d 9, 15 [59 Cal.Rptr. 857, 429 P.2d 177].