[Crim. No. 15749. In Bank. May 19, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT POWELL MILLER, Defendant and Appellant.

220

**COUNSEL**

Jerry M. Ackeret, under appointment by the Supreme Court, and Ackeret & Colteaux for Defendant and Appellant.

Evelle J. Younger, Attorney General, Robert R. Granucci and Sanford Svetcov, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TOBRINER, J.**—While driving in South San Francisco in the early hours of December 14, 1969, Robert Miller ran out of gas and brought his car to a stop in an abandoned private parking lot. Believing that no help would be available until dawn, he bedded down in the front seat to await an opportunity for assistance. At 3 in the morning a sergeant of the local police observed Miller's car in the lot and upon closer examination discovered Miller in the front seat.

When the sergeant first saw the vehicle some electronic and musical equipment lay on the back seat; Miller himself occupied the front seat. Because of the apparent value of the property in the back seat, and the neighborhood's high incidence of burglary, the sergeant told two assisting officers to take this property into custody in the event that they arrested Miller.

The assisting officers asked Miller for proof of identification in order to conduct a radio check for possible outstanding warrants against him. In complying with the officers' request, Miller examined the pockets of an overcoat that lay on the front seat. Failing to locate any identification in his overcoat, he placed the coat in the back seat with his other property. Miller then located his driver's license in his shirt pocket.

The radio check revealed an outstanding traffic warrant, and solely on that basis, while Miller was seated in the front seat of his car, the officers arrested him. One of the arresting officers immediately placed handcuffs on Miller's wrists and led him to the patrol car; Miller offered no resistance at this or any other time. At the time of the arrest, one of the officers, explaining to Miller the danger of leaving the property in the abandoned car, requested his permission to take the property into custody. Miller refused permission; when the officer reiterated his request, Miller expressly stated that he preferred to assume the risk of a burglary rather than permit the police to take the property.

The officers nonetheless decided, for the purpose of safekeeping, to take the goods into their custody. They loaded the overcoat and equipment into the trunk of their police car, and on arrival at the police station, searched the pockets of the overcoat. In one pocket they discovered one marijuana cigarette and a small bag of unrolled marijuana.

Despite his timely objections at both the preliminary hearing and the hearing under Penal Code section 1538.5 that the seized contraband be suppressed as the product of an unconstitutional search, Miller was con-

victed of one count of possession of marijuana. The People assert here that the need for safekeeping of Miller's equipment justified the search and seizure of the property without a warrant; alternatively they contend that the search and seizure were properly supported as incident to a lawful arrest. As we shall explain, neither theory affords a basis for the viability of the search and seizure that led to Miller's conviction.

In order to justify a search and seizure without a warrant, the People must show that "the exigencies of the situation made . . . imperative" the search under review. (*McDonald* v. *United States* (1948) 335 U.S. 451, 455-456 [93 L.Ed. 153, 158-159, 69 S.Ct. 191]; *accord, People* v. *Burke* (1964) 61 Cal.2d 575, 578-579 [39 Cal.Rptr. 531, 394 P.2d 67]; see *Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23]; *Virgil* v. *Superior Court* (1968) 268 Cal.App.2d 127, 132 [73 Cal.Rptr. 793].)
According to the United States Supreme Court's restrictive interpretation of "exigent situation," a search, without a warrant, can be conducted in a nonemergency situation only if the search coincides with a lawful arrest or detention and is restricted to the arrestee's person or area "within his immediate control." The search must not go "beyond the petitioner's person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him." (*Chimel* v. *California* (1969) 395 U.S. 752, 762-763, 768 [23 L.Ed.2d 685, 693-694, 697, 89 S.Ct. 2034]; see *Terry* v. *Ohio* (1968) 392 U.S. 1, 27-30 [20 L. Ed.2d 889, 909-911, 88 S.Ct. 1868]; *Preston* v. *United States* (1964) 376 U.S. 364, 367-368 [11 L.Ed.2d 777, 780-781, 84 S.Ct. 881].)

We turn, first, to the People's contention that, in addition to the foregoing recognized exception to the requirement for a warrant, the danger of theft from leaving property in an unattended car constitutes an additional "exigent situation" that justifies a warrantless search. In this respect we are governed by the recent case of *Mozzetti* v. *Superior Court* (1971) 4 Cal.3d 699 [94 Cal.Rptr. 412, 484 P.2d 84], which adjudicated a similar issue; moreover in *Gallik* v. *Superior Court* (1971) 5 Cal.3d 855 [97 Cal. Rptr. 693, 489 P.2d 573], we held that, since *Mozzetti* clarified and restated pre-existing constitutional rules, it should be applied retroactively (*id.* at p. 860, fn. 4). Hence *Mozzetti* controls the instant case even though we recognize that the superior court did not have the benefit of that opinion.

In *Mozzetti* the police conducted an inventory search of an automobile that they had removed from a public highway following the vehicle owner's emergency hospitalization. We held that the inventory search violated the Fourth Amendment's proscription of unreasonable searches and seizures, finding that the vehicle owner's interest in privacy outweighed any con-

flicting interests in the preservation of the owner's property during that period when he was absent from his car. (4 Cal.3d at p. 707.)

In reaching this conclusion to protect the privacy of absent vehicle owners, who, of course, are not available either to consent or object to an inventory of their property, we expressly recognized the more obvious right of the owners who *are* on the scene to express "their preference for the care of their personal property" and direct the police to "simply close the windows and lock the doors, rather than search the contents of their cars." (*Id.* at p. 708.) We also disapproved several cases in the Courts of Appeal, one of which, *People* v. *Gil* (1967) 248 Cal.App.2d 189 [56 Cal.Rptr. 88], upheld a police seizure of property in circumstances similar to those of the instant case. (See 4 Cal.3d at pp. 703, 708 & fn. 2, p. 712.)

Thus *Mozzetti* anticipated the situation that now confronts us. Applying the law of that case to the search and seizure of Miller's coat, we hold that the Fourth Amendment compelled the officers to honor Miller's stated desire that they leave the property undisturbed. Only by convincing a detached magistrate to issue a search warrant for the specific items in Miller's car could the police have intruded upon Miller's right to maintain the privacy of his personal effects and to dispose of them in any legitimate manner that he desired.

But even if the officers had properly seized the coat from the car, or Miller had expressly consented to removal or seizure of the coat for purposes of "safekeeping," we could not approve of the subsequent warrantless search of the coat's *pockets* at the police station. Once the police saved the coat and equipment from the danger of theft they fulfilled their purported goal of safekeeping and could adequately protect themselves from fraudulent claims by an inventory listing of the coat, pieces of equipment, and other "objects clearly visible without probing." (*Mozzetti* v. *Superior Court, supra,* 4 Cal. 3d at p. 707.) Since the coat's pockets lay within the zone of Miller's reasonable expectation of privacy (see *Terry* v. *Ohio, supra,* 392 U.S. at p. 19 [20 L.Ed.2d at p. 904]), the police can claim neither authority nor necessity to intrude into those pockets without a search warrant. (*People* v. *Bradley* (1969) 1 Cal.3d 80, 84 [81 Cal.Rptr. 457, 460 P.2d 129]; *People* v. *Edwards* (1969) 71 Cal.2d 1096, 1104-1105 [80 Cal.Rptr. 633, 458 P.2d 713].)

 The People nonetheless assert that even if we do not recognize that the interest of the police in safekeeping serves as an exigent circumstance to permit a search without a warrant, the search in this case finds alternative justification under the established exception of a search incident to lawful

arrest. The People do not contend that the search could properly follow as incident to the *traffic* arrest, but instead suggest—for the first time, on appeal —that the officers had probable cause to arrest Miller for receiving stolen property, and thus that the warrantless search and seizure of Miller's coat and equipment can be sustained as properly incident to an arrest on that charge. As we shall explain, the assertion cannot stand for several reasons.

First, the officers would have completely lacked probable cause to arrest Miller for receiving stolen property. ■ Police officers cannot properly claim that probable cause supports an arrest unless "the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed. *Carroll* v. *United States,* 267 U.S. 132, 162." (*Beck* v. *Ohio* (1964) 379 U.S. 89, 96 [13 L.Ed.2d 142, 148, 85 S.Ct. 223]; accord, *People* v. *Talley* (1967) 65 Cal. 2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564].) Officers cannot reasonably conclude on the basis of behavior that is entirely consistent with innocent activity that an offense has been committed. (See *Spinelli* v. *United States* (1969) 393 U.S. 410, 414, 418 [21 L.Ed.2d 637, 642, 644-645, 89 S.Ct. 584].)

In the instant case, the police discovered the defendant sleeping in a car in a private parking lot and observed electronic equipment in the rear seat of the vehicle. Certainly, the mere fact that defendant was found sleeping in such a location did not evidence any criminal behavior on his part; the additional fact that he happened to be carrying electronic equipment at that time would not, in itself, support an inference that the equipment was stolen, particularly since the police had not received any report of the theft of such material. Indeed, it seems quite unlikely that an individual who had just received stolen property would go to sleep in a car, leaving the contraband in plain sight.

■ The People suggest, however, that the defendant's reluctance to permit the police to seize the equipment for "safekeeping" constituted suspicious behavior in itself which would warrant the inference that the equipment was stolen. Such an argument—formulating "probable cause" from an individual's refusal to consent to a police search or seizure—would directly penalize an individual simply for exercising his constitutional right to be free from unreasonable searches and seizures by police. The courts have, of course, continually condemned any state practice which imposes adverse treatment on individuals for exercising constitutional rights intended to protect against such adversity (*Sherbert* v. *Verner* (1963) 374 U.S. 398 [10 L.Ed.2d 965, 83 S.Ct. 1790]; *Speiser* v. *Randall* (1958) 357 U.S. 513 [2 L.Ed.2d 1460, 78 S.Ct. 1332]; *Parrish* v. *Civil Service Commission* (1967) 66 Cal.2d 260, 270-271 [57 Cal.Rptr. 623, 425 P.2d 223]; *Bagley* v. *Wash-*

*ington Township Hospital Dist.* (1966) 65 Cal.2d 499 [55 Cal.Rptr. 401, 421 P.2d 409]) and thus we conclude that the state may not transform defendant's refusal to waive his Fourth Amendment rights into a "suspicious" activity evidencing criminal conduct. ■ In short, the facts available to the police—that defendant was found sleeping in a car containing electronic equipment and declined the police's offer to take the equipment into safekeeping—would not warrant a man of "reasonable caution" in concluding that an offense had been committed.

Second, since the officers arresting Miller did not *in fact* harbor beliefs that would support a reasonable suspicion that he had received stolen property, the People cannot establish probable cause on that ground. ■ Probable cause to arrest without a warrant represents an *objective* legal standard by which to measure the reasonableness and sufficiency of the officer's *subjective* beliefs that the defendant has committed an offense. (See *Beck* v. *Ohio, supra,* 379 U.S. at p. 96 [13 L.Ed.2d at pp. 147-148]; *People* v. *Talley, supra,* 65 Cal.2d at p. 835; *People* v. *Superior Court* (1970) 3 Cal.3d 807, 821 [91 Cal.Rptr. 729, 478 P.2d 449].) "[U]nless it is first established that the police officer *believed* that the crime . . . had been committed by the [defendant], the issue of probable cause does not arise, for it would be a logical absurdity for the courts to be asked to determine the reasonableness of an officer's belief that [the] particular crime had been committed unless it were first established that the officer did entertain such a belief." (*Agar* v. *Superior Court* (1971) 21 Cal.App.3d 24, 28-29 [98 Cal.Rptr. 148] (italics in original).) ■ Accordingly, the People cannot meet the objective criterion of probable cause for an arrest on a charge of stolen property, because they have failed initially to demonstrate, by an exposition of the officers' beliefs, that those officers suspected the defendant to be guilty of that crime.[1]

This proposition serves to promote the basic purpose of the exclusionary rule. The rule, which seeks to deter police officers from conducting unrea-

---

[1]Penal Code section 836 is fully consistent with this analysis. That section authorizes a police officer to arrest without warrant when "*he* has reasonable cause to *believe* that the person to be arrested has committed a public offense in his presence . . . or has committed a felony, whether or not a felony has in fact been committed" (italics added). The code thus requires as a condition of compliance that the officer formulate a *belief* of guilt at the time of arrest.

Although the officer must suspect that an individual has committed the elements of a crime in order eventually to establish probable cause to arrest for commission of that crime, the officer need not *articulate* all his suspicions at the time of arrest, so long as he informs the arrestee of at least one "cause of the arrest." (Pen. Code, § 841; *People* v. *Maddox* (1956) 46 Cal.2d 301, 305 [294 P.2d 6]; *People* v. *Superior Court* (1971) 15 Cal.App.3d 146, 151-152 [92 Cal.Rptr. 916]; *People* v. *Graves* (1968) 263 Cal.App.2d 719, 737-738 [70 Cal.Rptr. 509], disapproved on other grounds, *People* v. *Superior Court* [*Simon*], *ante,* p. 186 at p. 206 [101 Cal.Rptr. 837, 496 P.2d 1205].)

sonable searches and seizures (see *Elkins* v. *United States* (1960) 364 U.S. 206, 217 [4 L.Ed.2d 1669, 1677, 80 S.Ct. 1437]; *People* v. *Cahan* (1955) 44 Cal.2d 434, 445 [282 P.2d 905, 50 A.L.R.2d 513]), requires that courts focus first on the officers' beliefs before measuring those beliefs against the objective standard of probable cause. Clearly, police behavior cannot be labelled "reasonable" if the officers themselves did not believe they were acting on legitimate suspicions of unlawful activity. (*People* v. *Superior Court [Simon], supra, ante,* pp. 186, 198; *Agar* v. *Superior Court, supra,* 21 Cal.App.3d at pp. 28-32; *People* v. *Superior Court* (1971) 14 Cal. App.3d 935, 949-950 [92 Cal.Rptr. 545]; *Guevara* v. *Superior Court* (1970) 7 Cal.App.3d 531, 535 [86 Cal.Rptr. 657].)

Finally, the People cannot introduce on appeal a new theory to justify the search, in view of the defendant's lack of opportunity to present evidence in response to it, to cross-examine the prosecuting witnesses on testimony supporting the new theory, or to argue before the trier of fact the theory's invalidity or inapplicability. (*People* v. *Superior Court, supra, ante,* pp. 198, 199; *Reinert* v. *Superior Court* (1969) 2 Cal.App.3d 36, 42 [82 Cal.Rptr. 263].)

In sum, we must reject the novel theory that the search was incident to an arrest for possession of stolen goods. We conclude that, as to the seizure of the coat or the intrusion into its pockets, the People cannot support such conduct either as acts of safekeeping or as properly incident to a lawful arrest. The evidence, therefore, must be suppressed, and the conviction reversed.

The judgment is reversed.

Wright, C. J., Peters, J., Mosk, J., and Sullivan, J., concurred.

**BURKE, J.,** Concurring and Dissenting.—I concur with the result reached by the majority, for I agree that the warrantless search of the pocket of Miller's overcoat at the police station violated his reasonable expectation of privacy and that the search cannot be upheld as incident to an arrest for receiving stolen property because there was not probable cause to believe he committed that offense. Moreover, the theory that it was incident to an arrest for that offense was not presented in the trial court and may not be urged for the first time on appeal.

I disagree, however, with dictum by the majority indicating that unless the People establish that the arresting officer at the time of the arrest held a *subjective* belief that *a particular crime* had been committed by the person

to be arrested the People cannot establish probable cause to arrest for that crime. This dictum is inconsistent with Penal Code section 836 and the views of authorities hereinafter cited. The effect of the dictum will be to require that law enforcement officers be legal scholars and to fail "to give fair leeway for enforcing the law in the community's protection" (see *Brinegar* v. *United States,* 338 U.S. 160, 176 [93 L.Ed. 1879, 1891, 69 S.Ct. 1302]).

Our Legislature has provided an *objective* standard for an officer's authority to make an arrest. Penal Code section 836 provides: "A peace officer may . . . without a warrant, arrest a person: . . . Whenever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed."[1] Under this standard the "question is not what the state of mind of the arresting officer was, but instead whether a reasonable man would have grounds to believe the arrested person guilty." (See LaFave, Arrest: The Decision to Take A Suspect into Custody: The Report of the American Bar Foundation's Survey of the Administration of Criminal Justice in the United States (1965) pp. 254-255; in accord, *People* v. *Pike,* 239 Cal.App.2d 237, 240 [48 Cal.Rptr. 575]; *People* v. *Reed,* 202 Cal.App.2d 575, 578 [20 Cal.Rptr. 911]; *People* v. *Knox,* 178 Cal.App.2d 502, 513-514 [3 Cal.Rptr. 70].)[2]

In addition to the foregoing authorities it is implicit in various decisions that it is not essential that the arresting officer at the time of the arrest have a *subjective* belief that the arrestee is guilty of *a particular crime* in order to establish probable cause to arrest for that crime. (See, e.g., *Klingler* v. *United States* (8th Cir. 1969) 409 F.2d 299, 304; *People* v. *Superior Court,* 15 Cal.App.3d 146, 152-153 [92 Cal.Rptr. 916]; *People* v. *Walker,* 273 Cal. App.2d 720, 722-725 [78 Cal.Rptr. 439].) For example, in *Klingler,* which involved a statute similar to Penal Code section 836, the officer arrested Klingler for vagrancy and made a contemporaneous search that revealed a pistol, which formed the basis for a Federal Firearms Act charge against him. The court concluded that there was not probable cause to believe

---

[1] Reasonable cause exists "when the facts and circumstances within the knowledge of the officers at the moment of the arrest are sufficient to warrant a prudent man in believing that the defendant has committed an offense. [Citations.]" (*People* v. *Talley,* 65 Cal.2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564].)

[2] LaFave, *supra,* notes (at p. 255, fn. 49) that 1 Restatement of Torts (1934) section 119, comment j, concludes that if the actor's belief that the other was guilty of the felony were required only one suspect could be arrested. Some of the majority's language in this case indicates that a *belief* by the officer of the other's guilt of a particular crime is required, although other of the majority's language indicates that it is sufficient if the officer *suspects* the other's guilt of a particular crime. Only the former language, of course, presents the problem mentioned by the Restatement of Torts, *supra.*

him guilty of vagrancy. The court upheld the arrest, however, on the ground that there was probable cause to arrest him for robbery. Nowhere in the opinion is it stated that the officer held a *subjective* belief that Klingler was guilty of robbery, and the contrary is indicated by the officer's testimony that he did not think he had "enough facts" upon which to arrest Klingler for robbery. With respect to that testimony the court stated *"Because probable cause for an arrest is determined by objective facts, it is immaterial that [the officer] . . . testified that he did not think that he had 'enough facts' upon which to arrest Klingler for . . . robbery. His subjective opinion is not material.* See Terry v. State of Ohio, 392 U.S. 1, 22 . . . . *A . . . safeguard predicated on an objective standard requires an even-handed application.* From the standpoint of the individual, the . . . zone protecting his privacy . . . may be encroached . . . only by facts and circumstances totaling probable cause for arrest. [Citations.] *From the standpoint of the government, application of the principle of probable cause must allow room for some mistakes by the arresting officer."* (Italics added.)

I further note that section 120.1 of the American Law Institute, a Model Code of Pre-arraignment Procedure (Proposed Official Draft No. 1, April 10, 1972), like Penal Code section 836, contains an *objective* standard for an officer's authority to make an arrest, and under that section "the officer's inability to determine the particular crime which may have been committed will not render illegal an arrest." (*Id.* at p. 136.) The commentary to that section notes (at p. 136) that "there appears to be no ground in principle or authority that would justify requiring an arresting officer to be able to identify the precise crime for which he is arresting. . . . [I]t would be undesirable to require, as a condition of taking the person into custody, that the officer discover precisely what sort of serious criminality that person may have been involved in. And even if the raw facts of the situation are known to the officer, their precise legal characterization may involve legal subtleties with which an arresting officer should not be required to concern himself." The majority in this case, however, contrary to the views of the American Law Institute, require that the arresting officer "be able to identify the precise crime for which he is arresting," since, according to the majority, unless the arresting officer at the time of the arrest held a *subjective* belief that *a particular crime* had been committed by the arrestee the People cannot establish probable cause to arrest for that crime.

The majority cite *Beck v. Ohio*, 379 U.S. 89, 96 [13 L.Ed.2d 142, 148, 85 S.Ct. 223], *People v. Talley*, 65 Cal.2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564], and *People v. Superior Court*, 3 Cal.3d 807, 821 [91 Cal. Rptr. 729, 478 P.2d 449], but none of the citations support the proposition

that the *subjective* belief of the arresting officer as to the arrestee's guilt is critical in determining the legality of an arrest, as the majority herein indicate.[3]

The majority claim that the exclusionary rule "requires that courts focus first on the officers' beliefs [concerning the arrestee's guilt of a particular crime] before measuring those beliefs against the objective standard of probable cause." I disagree. The exclusionary rule seeks to deter unreasonable searches and seizures. A search and seizure incident to an arrest based upon probable cause to believe that the arrestee is guilty of a felony manifestly are not unreasonable merely because the officer may not have held a *subjective* belief that the defendant was guilty of that crime.

The only reason given by the majority for their claim that the exclusionary rule requires focusing on the officers' beliefs concerning the arrestee's guilt of a particular crime is that "police behavior cannot be labelled 'reasonable' if the officers themselves did not believe they were acting on legitimate suspicions of unlawful activity." However, officers may well be of the opinion that they are acting on such suspicions where they believe there is reasonable cause to believe the person has committed a felony, yet they may not have pledged their personal opinion of the arrestee's guilt[4] or may be unaware of the particular crime for which a lawful arrest could be made (see American Law Institute, A Model Code of Pre-arraignment Procedure, *supra,* at p. 136).

I would disapprove *Agar* v. *Superior Court,* 21 Cal.App.3d 24 [98 Cal. Rptr. 148], to the extent that it is inconsistent with the views I have expressed herein.

Another conclusion of the majority with which I disagree is their declaration that "the Fourth Amendment compelled the officers to honor Miller's stated desire that they leave the property undisturbed [in his car]."

---

[3] The majority also state that "Although the officer must suspect that an individual has committed the elements of a crime in order eventually to establish probable cause to arrest for commission of that crime, the officer need not articulate all his suspicions at the time of arrest, so long as he informs the arrestee of at least one 'cause of the arrest.' (Pen. Code, § 841; *People* v. *Maddox* . . . 46 Cal.2d 301, 305 [294 P.2d 6]; *People* v. *Superior Court* . . . 15 Cal.App.3d 146, 151-152 [92 Cal.Rptr. 916]; *People* v. *Graves* . . . 263 Cal.App.2d 719, 737-738 [70 Cal.Rptr. 509] . . . .)" None of the citations support the first clause of the quoted statement.

[4] A hypothetical example of the above appears in LaFave, *supra,* at page 254. "An officer investigating a murder found that the assembled evidence made it highly probable that a particular person had committed the offense. The suspect was a long-time personal friend of the officer, and consequently the officer could not bring himself to believe the suspect would commit such a crime. He nonetheless placed his friend under arrest."

In support of their conclusion the majority rely solely upon language in *Mozzetti* v. *Superior Court,* 4 Cal.3d 699 [94 Cal.Rptr. 412, 484 P.2d 84]. That language, however, is merely dictum. Furthermore, *Mozzetti* was concerned with what action should be taken by the police regarding property in a car *that is taken into police custody,* and the dictum relied upon by the majority did not declare that under any and all circumstances the police must honor an owner's stated desire regarding his property.

In my opinion under the circumstances hereinafter recited the officers acted reasonably in failing to honor Miller's stated desire regarding his property and in taking it from his car to the police station.

The property consisted of an overcoat and electronic and musical equipment. The officer who took the property stated that he did so solely to safeguard it, and the committing magistrate and trial court evidently believed his testimony.

The property appeared to be of considerable value and was in plain sight on the rear seat of Miller's car. The car was in an area known by the officers to have a high incidence of burglary and could not be moved immediately since it was out of gas.

One of the doors of Miller's car could not be locked. The officer who took the property testified that he did not try to get into Miller's car trunk and that he neither had, nor asked Miller for, the car keys. Even if (1) Miller's property could have fit into his car trunk and (2) a key thereto would have been furnished by him had the officers requested it, taking the property to the police station was a reasonable alternative method of protecting the property. Indeed the property would in all likelihood be safer at the police station than it would have been had it been placed in Miller's car trunk in view of the high crime area in which the car was parked. The officers had reason to believe that the car would be left unattended for more than a de minimis period of time since they arrested Miller for a traffic violation.

Safeguarding the property manifestly was not solely for the owner's benefit but also for the benefit of others. To leave the property in the unattended car following Miller's arrest would have invited the commission of crime by minors and others and could have led to a needless consumption of police time in efforts to retrieve the property.

McComb, J., concurred.