[No. A022622. First Dist., Div. Five. Mar. 12, 1985.]

DRUCILLA S. RAMEY et al., Plaintiffs and Appellants, v. CORNELIUS P. MURPHY, as Chief of Police, etc., et al., Defendants and Respondents.

COUNSEL

Amitai Schwartz, Margaret C. Crosby, Alan L. Schlosser and Donna J. Hitchens for Plaintiffs and Appellants.

Craig H. Casebeer, Scott C. Dettmer and Cooley, Godward, Castro, Huddleson & Tatum as Amici Curiae on behalf of Plaintiffs and Appellants.

George Agnost, City Attorney, Victoria Hobel and Paula Jesson, Deputy City Attorneys, for Defendants and Respondents.

OPINION

LOW, P. ██ ██ Even though arrests for violation of Penal Code section 647c[1] are made with the knowledge that relatively few will be prosecuted, such knowledge does not establish the officers acted in bad faith or without probable cause.

Plaintiffs instituted a taxpayers' suit against defendants for declaratory and injunctive relief, alleging illegal expenditure of public funds because of

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

the San Francisco Police Department's enforcement of section 647c and San Francisco Municipal (Police) Code sections 22 to 27. (Hereafter Police Code.) Plaintiffs appeal from that portion of the judgment entered in favor of defendants representing the San Francisco Police Department.

On appeal, plaintiffs contend that (1) section 647c arrests were routinely made in objective bad faith without a reasonable expectation that prosecution or conviction would follow; (2) such arrests were made without probable cause; (3) the trial court failed to resolve material controverted issues; (4) the court erroneously admitted and relied upon prejudicial evidence prepared by defendants; and (5) the court erred by not relying on court calendars and other court records prepared in the course of official duty.

## I.

Plaintiffs limit their attack to police practices related to section 647c and Police Code section 22: No claim is made that these sections are unconstitutional. Section 647c provides in part: "Every person who willfully and maliciously obstructs the free movement of any person on any street, sidewalk, or other public place or on or in any place open to the public is guilty of a misdemeanor." Police Code section 22 contains a similar provision: "a. No person shall wilfully and substantially obstruct the free passage of any person or persons on any street, sidewalk, passageway or other public place."

The San Francisco Police Department relies on section 647c as its "main weapon against street prostitution." (SFPD Prostitution and Gambling Status Report for Feb. 1980.) Section 647c has also been used extensively in the Tenderloin, Union Street and Polk Street areas in response to neighborhood and merchant complaints about prostitution, drug dealing, disorderly conduct, and other street crimes.

Most section 647c arrests, however, are discharged either without a complaint being filed or dismissed at arraignment. Plaintiffs' data, collected from court calendars over a two-year period between August 1980 and July 1982, showed 94 percent of section 647c arrests (out of 3,490 identified by plaintiffs) were either discharged or dismissed. There were 17 convictions (.49 percent) and only one jury trial which resulted in an acquittal. Arrest statistics for Police Code section 22 violations reveal similar results: Of the 199 arrests under section 22 for this same period, 93 percent were discharged or dismissed and there were no convictions. Although defendants challenged the statistical validity of plaintiffs' data, e.g., by showing some section 647c arrests were actually section 647, subdivision (c) arrests for

begging or soliciting alms, the trial court did find that the dismissal rate for section 647c arrests was "high" and the prosecution rate "low."

Plaintiffs presented evidence that approximately half of the defendants arrested under section 647c received police citations after a period of detention ranging from 10 minutes to 1½ hours. About 20 percent were transferred to the sheriff's custody and then cited; approximately 17 percent remained in custody until the first court appearance; 10 percent posted bail; and less than 1 percent were released on their own recognizance.

The arrests were made without warrants. San Francisco police representatives testified that police policy is to make such arrests only upon probable cause. Plaintiffs presented evidence that members of the San Francisco Police Department knew or should have known prosecution and conviction rates for section 647c arrests were low. Such knowledge was available through correspondence with the district attorney's office, interdepartmental directives, and the fact that both the district attorney and the municipal court have assigned a low priority to section 647c arrests.[2]

## II.

Relying on *Allee* v. *Medrano* (1974) 416 U.S. 802 [40 L.Ed.2d 566, 94 S.Ct. 2191], plaintiffs contend that section 647c arrests are made in bad faith. As a result of the restraints on liberty following arrest and booking, plaintiffs argue that a defendant is effectively punished before a trial on the merits in violation of a defendant's due process and equal protection rights. We conclude that these dismissal rates do not per se establish bad faith arrests.

The United States Supreme Court recognized bad faith prosecution as a valid ground for federal injunctive relief in *Dombrowski* v. *Pfister* (1965) 380 U.S. 479 [14 L.Ed.2d 22, 85 S.Ct. 1116]. It held that bad faith is evident where the state invokes or threatens to invoke criminal process "without any hope of ultimate success," but only to discourage the legitimate exercise of civil rights. (At p. 490 [14 L.Ed.2d at p. 30].) This standard for bad faith enforcement of a statute has been applied primarily in situations where First Amendment rights are involved and where harassment by state officials is often present. (See *Perez* v. *Ledesma* (1971) 401 U.S. 82 [27 L.Ed.2d 701, 91 S.Ct. 674]; *Cameron* v. *Johnson* (1968) 390 U.S. 611 [20 L.Ed.2d 182, 88 S.Ct. 1335]; *Krahm* v. *Graham* (9th Cir. 1972) 461 F.2d 703.)

---

[2]In the future, the priorities assigned to these arrests by the police or district attorney also could be reevaluated and reordered by other oversight and policymaking bodies, e.g., the police commission, the grand jury, or the California Department of Justice.

The *Dombrowski* standard for determining the existence of bad faith has not been applied to situations where the only concern is the existence, or nonexistence, of probable cause to arrest. Contrary to plaintiffs' argument, *Allee* v. *Medrano, supra,* 416 U.S. 802, did not apply the bad faith doctrine to arrests made where prosecution and conviction were uncertain. The police conduct condemned in *Allee* involved not just arrests without probable cause, but a wide range of acts of harassment, often violent, by Texas Rangers against organizers of the United Farm Workers' Union. The unlawful arrests were merely part of a "pervasive pattern of intimidation" by law enforcement authorities to suppress First Amendment rights. (At p. 812 [40 L.Ed.2d at p. 578].) ▮ The issue before the court was whether the Texas Rangers exercised authority under law in an unconstitutional manner. (*Ibid.*) Such an exercise of authority is recognized as an independent ground for injunctive relief in California. (See *Startrack, Inc.* v. *County of Los Angeles* (1976) 65 Cal.App.3d 451, 457 [135 Cal.Rptr. 283].)

▮ ▮ There is no claim or evidence of a conspiracy between the police and the district attorney in this appeal. In the absence of a conspiracy, application of the bad faith standard for prosecution would be inappropriate. Prosecutors and the police not only have different roles and duties, but each agency's standards for deciding whether to act within the scope of its authorized duties will differ as well. The prosecutor must be able to prove the charges against a defendant beyond a reasonable doubt, while police arrests need only be supported by probable cause to believe an offense has been committed. The decision to prosecute is also an exercise of a prosecutor's discretionary power over which police have no control. Neither an exoneration of the offense charged nor a failure to prosecute an arrest made without a warrant renders an arrest invalid. (*Coverstone* v. *Davies* (1952) 38 Cal.2d 315, 319 [239 P.2d 876]; *People* v. *Nihell* (1904) 144 Cal. 200, 203 [77 P. 916].) For these reasons, knowledge of prosecution rates is not determinative in analyzing bad faith arrests.

Proof of bad faith requires a showing of an *intent* to harass so as to deprive a defendant of protected rights or to cause corruption. Recognizing this requirement, plaintiffs argue that improper police motives for making section 647c arrests can and should be inferred from knowledge of the low prosecution rate.

However, plaintiffs have failed to demonstrate either actual malice, corruption or intent by San Francisco police to harass defendants or to interfere with their exercise of protected rights. The conduct and practices associated with making section 647c arrests do not rise to the level of illegal conduct. Absent are the strong-arm harassment tactics employed by law enforcement authorities in *Allee;* nor were there any police efforts to prevent the exercise

of First Amendment rights, an important factor in evaluating bad faith. (See *Perez* v. *Ledesma, supra,* 401 U.S. 82, 117-118 & fn. 11 [27 L.Ed.2d 701, 724-725].) Plaintiffs also presented no evidence of *repeated* arrests for section 647c of the *same* defendant or defendants within a short period of time for the purpose of harassment (cf. *Black Jack Distributors, Inc.* v. *Beame* (S.D.N.Y. 1977) 433 F.Supp. 1297).

 We need only briefly address plaintiffs' argument that defendants are punished as a result of restraints on liberty following arrest and booking where there is no trial on the merits. An arrest necessarily involves some form of detention or restraint; such detention incident to a lawful arrest is recognized by statutes authorizing release following arrest or arrest and booking. (See, e.g., §§ 849, 1295 et seq., 1318.) While the period of detention may be longer for a defendant who is arrested and booked than for those given citation releases, such detention cannot be deemed as punishment where charges are later dismissed or discharged. ██ "There is no right not to be booked, because the charge is a misdemeanor . . . . [Citations.]" (*Moore* v. *City & County of San Francisco* (1970) 5 Cal.App.3d 728, 736 [85 Cal.Rptr. 281].)

### III.

 Plaintiffs contend that section 647c arrests are routinely made without probable cause because the requisite element of "maliciousness" is absent, and that defendants had the burden of proving probable cause for *each* section 647c arrest made during the two-year period from which data were collected. We disagree.

Initially, we must express reservations on the use of a taxpayers' suit to challenge the validity of 3,490 arrests for lack of probable cause. ██ Normally, the determination of probable cause for arrest is decided on a case-by-case basis. (*People* v. *Ingle* (1960) 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].) Probable cause to arrest without a warrant "represents an *objective* legal standard by which to measure the reasonableness and sufficiency of the officer's *subjective* beliefs that the defendant has committed an offense. [Citations.]" (*People* v. *Miller* (1972) 7 Cal.3d 219, 226 [101 Cal.Rptr. 860, 496 P.2d 1228].) It would be unreasonable to require police to justify 3,490 arrests for probable cause in one suit.

Plaintiffs' argument that defendants have the burden of proving probable cause for each section 647c arrest must be dismissed as beyond the scope of the taxpayers' suit. Plaintiffs' complaint alleged illegal expenditures in the enforcement of section 647c due to the *policies and practices* of the San

Francisco Police Department. The issue at trial was not the *validity* of each of the 3,490 section 647c arrests, but that the challenged practices and policies allegedly permit arrests without probable cause to be routinely made. The trial court found that "the San Francisco Police Department had a policy and practice of arresting when there was probable cause to arrest." The appropriate standard of review is substantial evidence, and not the independent review argued by plaintiffs: ■ "An appellate court, in reviewing the propriety of an arrest without a warrant[,] must determine whether the trial court's ruling is supported by any substantial evidence and must accept all evidence and all reasonable inferences therefrom in support of the trial court's determination. [Citations.]" (*People* v. *Anthony* (1970) 7 Cal.App.3d 751, 762 [86 Cal.Rptr. 767].) Plaintiffs mistakenly rely on *People* v. *Watson* (1981) 30 Cal.3d 290 [179 Cal.Rptr. 43, 637 P.2d 279], which involved the standard of review for a trial court's determination of probable cause to hold a defendant to answer for a charged offense. (*Id.*, at pp. 299-300.) ■■ There is substantial evidence to support the trial court's finding that police practices and policies are to make arrests when there is probable cause to believe section 647c and Police Code section 22 have been violated.

Police policies for arrest have been set forth in departmental directives which indicate arrest reports should include the elements required for a violation of section 647c. Police officers testified to those acts by defendants that led them to believe a section 647c violation had occurred: grabbing a pedestrian, holding onto some part of the pedestrian's body to block his passage, hugging or patting the genital area, and pushing pedestrians into doorways.

There is also substantial evidence to support a finding that the behavior of those arrested included the requisite element of "maliciousness." The definition of "malice" required for section 647c was construed in *Jennings* v. *Superior Court* (1980) 104 Cal.App.3d 50, 55 [163 Cal.Rptr. 391], to "import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law . . . ." (See also *People* v. *Man* (1974) 39 Cal.App.3d Supp. 1, 4-5 [114 Cal.Rptr. 237].) Evidence of the circumstances that led a police officer to believe an intent to do a wrongful act existed included observations, noted in arrest reports, that the defendants were known prostitutes and had been warned several times before that their conduct was unlawful. ■ "In determining whether there was reasonable cause for arrest without warrant, police officers are justified in taking into account past conduct, character and reputation of the person suspected. [Citations.]" (*People* v. *Fuller* (1969) 268 Cal.App.2d 844, 853 [74 Cal.Rptr. 488].) ■■ The existence of probable cause for the specific arrests used to illustrate police practices and

policies supports a finding that such practices and policies ensure arrests with probable cause. Plaintiffs have failed to prove an illegal expenditure of public funds.

## IV.

Plaintiffs' remaining contentions are without merit. The trial court adequately resolved all controverted issues against plaintiffs. The manner of arrests reflects practices and policies that guard against acting without probable cause. ■ Plaintiffs contend that adequate practices require police to include the names of victims and witnesses in arrest reports to guarantee prosecution.[3] Such information, though helpful to the district attorney, is not required for the determination of probable cause; the issue is not whether an arrest will be prosecuted, but whether the facts of each case warrant a strong suspicion or a reasonable belief an offense has been committed: ■ "The law looks only at the facts and circumstances presented to the officer at the time he is required to act. [Citations.]" (*People* v. *Anthony, supra,* 7 Cal.App.3d at p. 762.) ■ We have conducted an independent review of the bad faith issue and resolved it in defendants' favor; we need not address plaintiffs' contentions that the court erred by admitting prejudicial evidence prepared by defendants and by not relying on court calendars and other court records prepared in the course of official duty.

The judgment is affirmed.

King, J., and Haning, J., concurred.

A petition for a rehearing was denied April 5, 1985, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied June 20, 1985.

---

[3]We are sensitive to defendants' argument that some of the victims are people confined to the poorer sections of San Francisco who cannot freely use the sidewalks in their own neighborhood.