[No. B005186. Second Dist., Div. Seven. Dec. 17, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
BENJAMIN ADAMS, Defendant and Appellant.

856

**COUNSEL**

Dan Mrotek, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John R. Gorey, Supervising Deputy Attorney General, and Ivy K. Kessel, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**JOHNSON, J.**—Defendant appeals from his convictions of kidnapping for robbery, robbery and attempted robbery. He also challenges the sentence enhancements imposed under Penal Code section 12022.1 and imposition of dual sentences for robbing and kidnapping the same victim. We affirm the convictions and sentence enhancements but remand for resentencing.

### FACTS AND PROCEEDINGS BELOW

Defendant was found guilty after a jury trial of robbing two men and attempting to rob a third on separate occasions. As to one victim, defendant was found guilty of both robbery and kidnapping for purposes of robbery and sentences were imposed on both counts. The trial court imposed two-year sentence enhancements under Penal Code section 12022.1 because defendant committed the additional crimes while he was free on bail after his arrest for the first robbery.

We summarize the evidence and pretrial motions below. Where necessary, more detail is provided as we discuss the issues raised on appeal.

### 1. SUMMARY OF THE EVIDENCE

Defendant followed a similar modus operandi in each robbery. He approached the victim and requested the victim help him start his car. One victim agreed to help. Defendant got into the victim's car and pretended to show the victim the location of defendant's disabled automobile. The second victim told defendant he had no jumper cables. Defendant struck the victim on the head with the blunt end of a knife and forced the victim into his vehicle. Defendant directed both victims to a deserted area where he robbed them. The third victim was spared this fate by the intervention of a police officer who was familiar with the defendant's operation and saw defendant approach the intended victim.

Each robbery occurred in daylight and each victim had ample opportunity to observe defendant at close range for several minutes. Each victim was positive in his identification of defendant.

Defendant was arrested shortly after the first robbery based on a description given by the victim and recovery of the victim's wallet from defendant's pocket. The pertinent facts of this search and seizure are discussed below at pp. 820-861. Defendant was released on bail the day following this arrest, May 23. He kidnapped and robbed the second victim the next day, May 24. He attempted to rob the third victim on May 28 and was arrested during the attempt. He remained in custody thereafter.

Defendant was the only defense witness. He explained the presence of the first victim's wallet in his pocket by stating he had seen some men throw it on the ground and had picked it up. He claimed the victims were mistaken in identifying him as the robber.

### 2. THE FARETTA AND MARSDEN MOTIONS*

. . . . . . . . . . . . . . . . . . . . . . . . .

### 3. THE SUPPRESSION MOTION

Defendant, through his counsel, moved to suppress evidence of the wallet belonging to the first victim. The ground for the motion was the officer who recovered the wallet went beyond what is permissible in a detention search by reaching into defendant's back pocket, removing and examining the wallet. The suppression motion was denied.

---

*See footnote, *ante,* page 855.

## ISSUES

I. Did the trial court err in refusing to remove the particular deputy public defender on the grounds of conflict of interest or breakdown in the attorney-client relationship?

II. Did the trial court err in denying defendant's motion to proceed in pro per?

III. Did the trial court err in not suppressing evidence of the stolen wallet?

IV. Did the trial court err in imposing enhancements under Penal Code section 12022.1?

V. Did the trial court err in its sentencing?

## DISCUSSION

### I. DENIAL OF THE DEFENDANT'S MARSDEN MOTIONS WAS NOT AN ABUSE OF DISCRETION

A. *The Filing of a Malpractice Claim Against the Deputy Public Defender Did Not Create a Per Se Conflict of interest**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### III. THE COURT CORRECTLY DENIED THE MOTION TO SUPPRESS EVIDENCE A VICTIM'S WALLET WAS FOUND IN DEFENDANT'S POSSESSION PRIOR TO HIS ARREST

Before addressing this issue an expanded statement of the facts is necessary.

The record shows Long Beach Police Officer Bryan Buchanan received information from robbery victim Sherman Elsbury that a light-skinned Black male, approximately forty years old and over six feet tall, wearing a white straw hat, dark pants and a light shirt had robbed Mr. Elsbury of his wallet in the vicinity of 36th Street and Atlantic Boulevard. Officer Buchanan was also informed that the robber was possibly armed with a gun and had made his "get away" in a Lincoln Continental bearing Arizona license plates.

*See footnote, *ante,* page 855.

Approximately two hours later, Officer Buchanan was patrolling the vicinity in which the robbery had occurred when he noticed a Black male, later identified as defendant, who matched the physical description of the robber in every detail including the white straw hat. Approximately 100 feet away, Officer Buchanan also noticed a green Lincoln Continental bearing Arizona license plates. Officer Buchanan along with his partner drove the patrol unit toward defendant who looked toward the officers, became nervous, and started to walk away from them. Officer Buchanan ordered defendant to halt. He did. Officer Buchanan's partner then conducted a pat-down search for weapons. After defendant was found to be unarmed, Officer Buchanan asked defendant to produce identification. Defendant became noticeably nervous and stated that he did not possess any identification. At that point Officer Buchanan looked at defendant's rear pants pocket and observed the outline of a wallet. Officer Buchanan asked defendant, "Don't you have identification in the wallet." Defendant replied, "No. My name is Ben." Believing the defendant was lying, Officer Buchanan seized the wallet from defendant's pocket. As he did so Officer Buchanan saw a card protruding out of the wallet bearing the name of robbery victim Sherman Elsbury. At that point, another patrol unit was instructed to bring Mr. Elsbury to the scene to see if he could identify defendant as the robber. Mr. Elsbury arrived within ten minutes and positively identified defendant as the robber. Defendant was then placed under arrest.

At the suppression hearing, Officer Buchanan testified at the time he ordered defendant to halt he was "detaining" defendant based on his physical description, his presence in the area where the robbery had taken place two hours before and his close proximity to an automobile that matched the description of the getaway car.

The parties do not dispute good cause for defendant's detention. ▮▮ It is further conceded the search that produced the wallet went beyond what is permissible in a search incident to detention. (See *Terry* v. *Ohio* (1968) 392 U.S. 1, 29-30 [20 L.Ed.2d 889, 910-911, 88 S.Ct. 1868]; *People* v. *Leib* (1976) 16 Cal.3d 869, 876 [129 Cal.Rptr. 433, 548 P.2d 1105].) The People seek to validate the search on the theory it was incident to a lawful arrest. In the alternative the People argue the wallet was subject to seizure under the plain view doctrine. (*Skelton* v. *Superior Court* (1969) 1 Cal.3d 144, 157 [81 Cal.Rptr. 613, 460 P.2d 485].) Under the facts of this case we reject the "plain view" test out-of-hand.[5] We turn now to the question whether the search was incident to a lawful arrest.

---

[5](See *People* v. *Sirhan* (1972) 7 Cal.3d 710, 742 [102 Cal.Rptr. 385, 497 P.2d 1121]; *People* v. *Marshall* (1968) 69 Cal.2d 51, 58 [69 Cal.Rptr. 585, 442 P.2d 665]; *People* v. *Conley* (1971) 21 Cal.App.3d 894, 901 [98 Cal.Rptr. 869].)

The fact defendant was not formally arrested until after the search does not invalidate the search if probable cause to arrest existed prior to the search and the search was substantially contemporaneous with the arrest. (*People* v. *Marshall, supra,* 69 Cal.2d at p. 61; *People* v. *Terry* (1969) 70 Cal.2d 410, 429 [77 Cal.Rptr. 460, 454 P.2d 36].) The record shows defendant was placed under formal arrest about ten minutes after the search. Accordingly, we find the search was contemporaneous with the arrest.

Probable cause to arrest defendant for robbery existed prior to the search. ■ An officer has probable cause for a warrantless arrest if the facts known to him " ' " "would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." ' " (*People* v. *Frierson* (1979) 25 Cal.3d 142, 169 [158 Cal.Rptr. 281, 599 P.2d 587].) ■ Here, a citizen witness— not a criminal informant—had supplied information a crime had been committed and described the perpetrator in great detail. The description of the robber matched this defendant in every detail, including the white hat. The defendant was found in close proximity to a green Lincoln Continental with Arizona license plates. The vehicle matched the getaway car in every respect except the color, which the victim described as gray. Defendant attempted to flee when approached by the officers. He appeared nervous and gave vague and evasive answers regarding his identity. He claimed to have no identification even though he clearly possessed a wallet in his pocket. These facts were sufficient to supply the officer with an honest and strong suspicion that defendant was the person who robbed Mr. Elsbury. (Cf. *In re Louis F.* (1978) 85 Cal.App.3d 611, 615-616 [149 Cal.Rptr. 642].)

Defendant argues whether or not the officer could have held such a belief, in fact he did not. If he had, he would have arrested defendant at the time he first encountered him rather than merely detain him. According to defendant, probable cause to arrest does not exist unless the officer believes that it exists. Absent this subjective belief probable cause cannot be established.

Defendant misconstrues the nature of the "subjective belief" referred to in cases such as *Agar* v. *Superior Court* (1971) 21 Cal.App.3d 24, 28-30 [98 Cal.Rptr. 148] approved in *People* v. *Miller* (1972) 7 Cal.3d 219, 226 [101 Cal.Rptr. 860, 496 P.2d 1228]; *People* v. *Superior Court (Simon)* (1972) 7 Cal.3d 186, 198 [101 Cal.Rptr. 837, 496 P.2d 1205] and *People* v. *Frierson, supra,* 25 Cal.3d at p. 169.

■ Courts use "subjective belief" when referring to the facts known to the officer at the time he acted; not his legal conclusions about the significance of those facts. (*People* v. *Miller, supra,* 7 Cal.3d at p. 225; *People*

v. *Superior Court (Simon), supra,* 7 Cal.3d at p. 198.) ▮ In *Miller* there were no facts known to the officers to suggest the property in Miller's possession was stolen or that Miller had stolen it or received it. The theory Miller's search was incident to a lawful arrest for receiving stolen property was a pure invention by the prosecutor raised for the first time on appeal. (7 Cal.3d at pp. 224-225.)

Similarly, in *Simon, supra,* it was argued the search of defendant's person could be justified as incident to an arrest for car theft. Defendant was arrested for driving without headlights or taillights. There were no facts known to the officer suggesting the car was stolen. In suppressing evidence of marijuana found on the defendant, the court stated: "[T]here is no showing that the officer in fact believed defendant was guilty of automobile theft; he did not inform defendant that such was the ground for the arrest, and at the preliminary examination he testified only that he arrested defendant for the equipment violations and took him into custody because of his lack of identification. The purpose of the exclusionary rule—to deter unreasonable searches and seizures by law enforcement officers—would clearly be frustrated if the courts were required to uphold a search conducted on unreasonable grounds simply because the prosecuting authorities belatedly managed to devise an alternative theory on which the arresting officer *could* have acted reasonably if he had known of it. Compliance with the fundamental guarantees of the Fourth Amendment is not a game to be won by inventive counsel, but a practical, day-to-day responsibility of law enforcement personnel. Accordingly, just as a warrantless arrest or search cannot be justified by facts of which the officer was wholly unaware at the time . . . also it cannot be justified on theories thereafter invented for the consumption of reviewing courts." (Citations omitted, italics in original.) (7 Cal.3d at p. 198.) (See also *Agar* v. *Superior Court, supra,* 21 Cal.App.3d at pp. 28-30; *People* v. *Gallegos* (1964) 62 Cal.2d 176, 178 [41 Cal.Rptr. 590, 397 P.2d 174].)

▮ As the *Agar* opinion points out there must be some facts on which the objective standard for probable cause can operate. "[I]t would be a logical absurdity for the courts to be asked to determine the reasonableness of an officer's belief that a particular crime had been committed unless it were first established that the officer did entertain such a belief." (21 Cal.App.3d at pp. 28-29.) ▮ In the case before us, it is clear the officer acted on the basis of facts strongly suggesting a robbery had occurred (the victim's statements) and defendant was the robber (defendant's physical appearance, location and statements). ▮ The conclusion of law drawn from these facts by the officer is not binding on the court. The court must independently scrutinize the facts to determine the existence of probable cause.

Courts have never hesitated to overrule an officer's determination he had probable cause to arrest. We see no reason why a court cannot find probable cause, based on facts known to the officer, despite the officer's judgment none existed. In *Florida* v. *Royer* (1983) 460 U.S. 491 [75 L.Ed.2d 229, 103 S.Ct. 1319], the State argued Royer was not being illegally detained when his bag was searched because there was probable cause to arrest him at that time. However, an officer had testified at the suppression hearing there was no probable cause to arrest Royer until his bags were opened. The court was not concerned with this aspect of the officer's testimony. The court commented, "[T]he fact that the officers did not believe there was probable cause [to arrest] and proceeded on a consensual or *Terry*-stop rationale would not foreclose the State from justifying Royer's custody by proving probable cause . . . ." (460 U.S. at p. 507 [75 L.Ed.2d at p. 242].) The court proceeded to examine the facts known to the officers and concluded, in this instance, the officers were correct in their assessment they lacked probable cause to arrest. See also *United States* v. *Day* (3rd Cir. 1972) 455 F.2d 454, 456 in which the officer testified he did not have probable cause to search but was merely suspicious. The court held the testimony was not conclusive on the issue. "Of course, we would not consider ourselves bound by a police officer's inability to articulate his conclusions if the facts clearly demonstrated the existence of probable cause."

Actions speak louder than words. It would be ludicrous to throw out evidence obtained in a search conducted with probable cause to arrest because of the officer's after-the-fact characterization of his actions. We are concerned with the officer's belief as to what it is, factually, he is observing not with his belief as to the legal significance of what he observes. (See 1 LaFave, Search and Seizure (1985 Pocket Supp.) § 3.2, p. 177.) In *People* v. *Lewis* (1980) 109 Cal.App.3d 599 [167 Cal.Rptr. 326] the court upheld the search even though there was a discrepancy in the officers' testimony over whether defendant was under arrest or only being detained at the time of the search. Because the court found there was probable cause to arrest the defendant before he was searched the discrepancies in testimony were irrelevant. "This is so," the court stated, "because even though Officer Jones characterized the defendant's status as detention rather than arrest when he was searched, he too entertained the subjective belief that an offense was committed." (*Id.*, at p. 611.)

Surely the deterrence function of the exclusionary rule is not advanced by suppression when an officer has correctly ascertained the facts but has somehow been prompted to express an erroneous legal interpretation of those facts. This is significantly different from the situation in *Simon* where the facts and the rationale are supplied by the prosecutor, not the officer. (7 Cal.3d at p. 198.) It also is different from a situation where the

officer only has enough information to support a detention but proceeds to arrest the defendant. Here the amount of information the officer possessed matched the degree of intrusion on the defendant's constitutional rights. In the case before us the evidence was obtained by action based on facts entirely in accord with the Fourth Amendment. The communication to the officer should be he does have grounds to arrest on such facts; not the contradictory message that probable cause for arrest necessitates our exclusion of the evidence he seized.

IV. THE TRIAL COURT PROPERLY ENHANCED DEFENDANT'S SENTENCE UNDER PENAL CODE SECTION 12022.1*

. . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed. The matter is remanded for resentencing in compliance with the views expressed herein.

Lillie, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied January 13, 1986, and appellant's petition for review by the Supreme Court was denied April 17, 1986.

*See footnote, *ante,* page 855.