Shannon CAMPBELL, Plaintiff,

v.

FELD ENTERTAINMENT, INC., et al., Defendants.

Mark Ennis, Plaintiff,

v.

Feld Entertainment, Inc., et al., Defendants.

Case Nos.: 12–CV–04233–LHK, 13–CV–00233–LHK

United States District Court, N.D. California, San Jose Division.

Signed December 15, 2014

**1198**

G. Whitney Leigh, Gonzalez & Leigh, LLP, San Francisco, CA, Matthew A. Siroka, Law Office of Matthew A. Siroka, San Francisco, CA, for Plaintiff.

Rubina Kazi, McManis Faulkner, McManis Faulkner A. Professional Corporation, San Jose, CA, John Morgan Simpson, Michelle C. Pardo, Fulbright and Jaworski, LLP, Washington, DC, Peter Harold Mason, Tambry Lynette Bradford, Tarifa B. Laddon, Todd Matthew

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LUCY H. KOH, United States District Judge

Plaintiffs Shannon Campbell ("Campbell") and Mark Ennis ("Ennis") (collectively, "Plaintiffs") have brought a diversity action against defendants Feld Entertainment, Inc. ("FEI"), operator of the Ringling Bros. and Barnum & Bailey Circus ("Circus"); Michael Stuart ("Stuart"); and David Bailey ("Bailey") (collectively, "Defendants") for alleged violations of state law and common law torts.

Before the Court are the parties' cross-motions for summary judgment. Specifically, the Court addresses Defendants' Motion for Summary Judgment or, Alternatively, Partial Summary Judgment, ECF No. 187[1] ("Defs.' Mot."), and Plaintiffs' Motion for Partial Summary Judgment, ECF No. 188 ("Pls.' Mot.").

Having considered the submissions of the parties, the relevant law, and the record in this case, the Court DENIES Plaintiffs' Motion for Partial Summary Judgment, and GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment or, Alternatively, Partial Summary Judgment.

## I. BACKGROUND

### A. Factual Background

This lawsuit is but the latest in a decade-long series of legal disputes involving the Circus and Humanity Through Education ("HTE"), a San Francisco Bay Area animal rights organization that protests the treatment of Circus animals.[2] *See* ECF No. 189, Declaration of Mark Ennis ("Ennis Decl.") ¶¶ 3–4; ECF No. 194, Corrected Declaration of Shannon Campbell ("Campbell Decl.") ¶ 3. When the Circus comes to northern California, Plaintiffs, who are members of HTE, hold signs and

---

1. Unless otherwise indicated, all ECF references are from the docket of No. 12–04233.

2. *See, e.g., Cuviello v. Feld Entm't, Inc.*, No. 13–03135 (N.D. Cal.); *Cuviello v. City & Cnty. of S.F.*, No. 12–03034 (N.D. Cal.); *Bolbol v. Feld Entm't, Inc.*, No. 11–05539 (N.D. Cal.); *Cuviello v. Cal Expo*, No. 11–02456 (E.D. Cal.); *Ennis v. City of Daly City*, No. 09–05318 (N.D. Cal.); *Cuviello v. City of Oakland*, No. 09–02955 (N.D. Cal.); *Bolbol v. City of Daly City*, No. 09–01944 (N.D. Cal.); *Cuviello v. City of Oakland*, No. 06–05517 (N.D. Cal.); *Bolbol v. Ringling Bros. & Barnum & Bailey Circus*, No. 04–00082 (N.D. Cal.).

banners and offer informational leaflets about what Plaintiffs consider to be the mistreatment of Circus animals. Ennis Decl. ¶ 3; Campbell Decl. ¶ 5. Plaintiffs also videotape the animals and their handlers for the purpose of educating the public about how the animals are treated. Ennis Decl. ¶ 3; Campbell Decl. ¶ 5. Campbell, for her part, has been leafleting patrons of the Circus for six years and videotaping its treatment of animals for five years. Campbell Decl. ¶ 4. Ennis has been engaged in protest activities for about fourteen years. Ennis Decl. ¶ 8.

The Circus generally comes to the San Francisco Bay Area every August and September. ECF No. 84–1, Declaration of David Bailey ("Bailey Decl.") ¶ 2; ECF No. 84–3, Declaration of Michael Stuart ("Stuart Decl.") ¶¶ 2, 7. A few days before the first performance, FEI brings the animals via railroad to the city in which they are performing and then walks them, accompanied by a police escort, from the railroad to the Circus venue (the "animal walk"). ECF No. 205–1, Deposition of Michael Stuart ("Stuart Dep.") at 16, 202–03. FEI reverses the process following the last performance. Id. at 16. In the interim, the animals are kept in a compound, typically in the parking lot adjacent to the arena where the Circus is performing. ECF No. 205–2, Deposition of David Bailey ("Bailey Dep.") at 31–33. Plaintiffs

and other members of HTE videotape the animals during the walks and while the animals remain in the compound. Ennis Decl. ¶ 12; Campbell Decl. ¶ 8. In 2007, FEI employees began using long ropes to form a moving barrier separating the general public from the animals and their handlers as they walk to and from the Circus venue. Stuart Dep. at 49, 114–15; Stuart Decl. ¶¶ 9–12. Since August 2012, however, FEI has not performed animal walks in northern California. Stuart Dep. at 180, 207.

Plaintiffs allege that Defendants have a "policy and practice ... to intentionally interfere with Plaintiffs' free speech rights" at the animal walks. ECF No. 158, Fourth Amended Consolidated Complaint ("FACC") ¶ 29 (internal quotation marks omitted). In particular, Plaintiffs assert that over the past several years Defendants have harassed them and interfered with their ability to videotape the animals. Id. ¶¶ 30–32. Defendants' alleged misconduct takes three general forms: (1) using ropes during the animal walks to harass Plaintiffs and interfere with their videotaping; (2) shining lights into Plaintiffs' cameras; and (3) physical and verbal assaults on Plaintiffs while they are videotaping. Id. Defendants' misconduct, Plaintiffs allege, spans five incidents over the past several years.[3] The Court briefly recounts each.

---

**3.** Plaintiffs' FACC and their subsequent declarations refer to additional incidents of alleged misconduct. Plaintiffs have confirmed, however, that the Stockton 2007, Oakland 2008, Oakland 2009, and Daly City 2011 incidents are not at issue. ECF No. 201 ("Pls.' Opp.") at 8. Plaintiffs' motion papers also abandon any allegations arising out of the San Jose 2013 incident, for which the Court granted Campbell leave to supplement her complaint. See ECF No. 154 at 21. In addition, Defendants argue that Plaintiffs have surrendered any claims arising out of the Oakland 2010 incident because Plaintiffs failed to raise the incident in their opposition. See ECF No.

208 ("Defs.' Reply") at 3. However, because Plaintiffs discuss the Oakland 2010 incident in both their partial summary judgment motion and their reply, see Pls.' Mot. at 18–20; ECF No. 209 ("Pls.' Reply") at 3, the Court will consider Plaintiffs' claims arising out of that incident, see Davis v. City of Las Vegas, 478 F.3d 1048, 1058–59 (9th Cir.2007) (finding no abandonment for purposes of appeal where plaintiff "did not oppose summary judgment as to the battery claim" but "fil[ed] his own motion for partial summary judgment in which he sought summary judgment as to the battery claim").

### 1. Oakland 2010

██ On August 12, 2010, Campbell alleges that FEI employees "shined a laser pointer" into her camera and eyes while she was attempting to videotape the treatment of Circus animals. Campbell Decl. ¶¶ 19–20; *see* Ex. C to Campbell Decl. (video clip showing the incident). Campbell claims that her vision was affected for a "short period," perhaps "five to ten minutes," after the light was flashed in her eyes. Campbell Dep. at 196–97; *cf.* Campbell Decl. ¶ 19 (stating that her vision was impaired for "10–15 minutes afterward"). She did not suffer physical injury or seek medical attention as a result. Campbell Dep. at 197, 216. Throughout the incident, Campbell says she was standing at the entrance to the Oakland arena's north tunnel, an area from which she was permitted to videotape.[4] Campbell Decl. ¶ 19.

### 2. San Jose 2011

On August 16, 2011, Ennis states that he was filming an animal walk in San Jose. Ennis Decl. ¶ 16. As the procession passed through the arena's parking lot, Ennis walked ahead to get a better view of the elephants entering the fenced area where they would be kept. *Id.* At that point, Ennis alleges that an FEI employee directed the rope holders to wrap the rope around a lamppost where Ennis was standing, thereby blocking his path. *Id.* ¶ 17;

*see* Ex. A to Ennis Decl., Clip 6 (video clip showing the incident). Without prior notice or his consent, Ennis claims, the rope was wrapped around him and pulled tight for about a minute as he filmed. Ennis Decl. ¶ 17; Ennis Dep. at 83. However, according to Stuart, then director of circus operations, Ennis simply "walked into" the rope on his own. Stuart Dep. at 10, 74–75. Ennis claims that the incident was "uncomfortable and embarrassing." Ennis Decl. ¶ 17.

### 3. Fresno 2012

On July 8, 2012, Ennis says he was attempting to film Circus animals as they entered the Fresno arena. Ennis Decl. ¶ 18; Ennis Dep. at 228–29. Standing behind a wall on a public sidewalk, Ennis mounted his camera atop a monopod so that he could film down into the area where he anticipated the animals would be brought. Ennis Dep. at 227, 234–35. According to Ennis, several uniformed Circus performers threw sticks and ice at his camera. Ennis Decl. ¶ 18; *see* Ex. A to Ennis Decl., Clips 11–13 (video clips showing the incident). One of the sticks hit Ennis's camera, while another caromed off a nearby pillar and struck him in the shoulder. Ennis Dep. at 228, 235. Ennis, however, suffered no physical injury as a result. *Id.* at 235.

---

**4.** A federal injunction, according to Plaintiffs, provides the basis for approval. *See Cuviello v. City of Oakland,* No. C 06–05517 MHP EMC, 2007 WL 2349325, at *8 (N.D.Cal. Aug. 15, 2007) (granting an injunction allowing activists "to stand at or near the railway of the [Oakland arena's] north ramp landing in order to photograph or videotape circus animals"). Plaintiffs ask the Court to take judicial notice of (1) then-Magistrate Judge Chen's Report and Recommendation advising that the injunction be modified; (2) Judge Patel's adoption of the Report and Recommendation; (3) FEI's motion to intervene in

that case; and (4) FEI's opposition to the plaintiffs' motion in that case for an order to show cause why FEI should not be held in contempt. *See* ECF No. 190. The Court GRANTS Plaintiffs' request as to all these documents because they are matters of public record not subject to reasonable dispute. *In re Yahoo Mail Litig.,* 7 F.Supp.3d 1016, 1024 (N.D.Cal.2014) (explaining that "[p]roper subjects of judicial notice" include "court documents already in the public record and documents filed in other courts" (citing ·*Holder v. Holder,* 305 F.3d 854 866 (9th Cir.2002)).

### 4. Oakland 2012

On August 7, 2012, Plaintiffs traveled to Oakland to videotape a nighttime animal walk from the Circus train to the arena. Ennis Decl. ¶ 19; Campbell Decl. ¶ 11. Campbell claims that "Defendants persistently interfered with [her] ability to walk along Baldwin Street as [she] videotaped" the animal walk, and that "Defendants forcibly blocked the natural flow of pedestrian traffic on the public street using their bodies and ropes." Campbell Decl. ¶ 14. Campbell alleges that FEI employees "yell[ed]" at her several times to "get up on the sidewalk," even though no sidewalk existed. *Id.*; *see* Ex. A to Campbell Decl. (video clip showing the incident). After being forced onto a "rocky uneven surface," Campbell says that Stuart approached her at close range, contacted her with his body, and told her that she was "into the rope" and to get on the sidewalk. Campbell Decl. ¶ 14; Campbell Dep. at 113. In response, Campbell told Stuart he did not have "any fucking right" to touch her with his body. Campbell Dep. at 110. Campbell then complained that Stuart had no right to put his hands on her; but when Stuart asked her whether he had done so, Campbell responded "more accurately" that Stuart had "pushed his body against [hers]." Campbell Decl. ¶ 14; *see also* Campbell Dep. at 113 (testifying that Stuart's "stomach [was] protruding, and that's what he was pushing against me"). Stuart denies ever making contact with Campbell. Stuart Dep. at 55.

After another minute had passed, Campbell told a different FEI employee, "Get your hands off me!" to which the employee replied, "My hands are not on you." Campbell Decl. ¶ 14. Campbell then responded, "Your body is pushing against me; you're not allowed to do that." *Id.* Another minute or so later, Stuart told members of the crowd that the area behind the Oakland arena's Baldwin Street entrance was private property and, according to Campbell, he then "use[d] his body to physically block" some of the spectators from proceeding. *Id.* As the crowd approached the narrowing entrance, Campbell alleges that she was sandwiched between metal barricades. *Id.* ¶ 15. Forced to jump over one of them, Campbell claims that she sustained a bruise on her leg that lasted approximately one month. *Id.* She did not seek any medical care for the bruise. Campbell Dep. at 135.

Ennis, on the other hand, claims that as the procession approached the Baldwin Street entrance, which Plaintiffs claim was open to the public, Ennis was told by Stuart and a security guard that the area was private property and that he could not go any further. Ennis Decl. ¶ 20; *see* Ex. A to Ennis Decl., Clips 8–10 (video clips showing the incident). After protesting that the entrance was open to the public and attempting to proceed, Ennis alleges that Stuart "blocked [Ennis] with his body," "push[ed] his stomach against [Ennis's]," and "reached over and hit [Ennis] in the back." Ennis Decl. ¶ 20. Ennis later testified, however, that rather than grabbing him, "[Stuart] just like put his hand on [him]." Ennis Dep. at 265. In any event, Ennis claims that he did not consent to being touched, and that he found Stuart's actions offensive. *Id.* Stuart, for his part, testified that a police officer had told him the area behind the Baldwin Street entrance was not open to the public and that no part of his body ever touched Ennis's. Stuart Dep. at 55, 78, 147–48.

### 5. San Jose 2012

On August 18, 2012, Ennis alleges that an unknown FEI employee "purposely walked into [him]" while Ennis was using a monopod to videotape animals over the back gate at the San Jose arena. Ennis Decl. ¶ 21; Ennis Dep. at 307–08; *see* Ex.

A to Ennis Decl., Clip 1 (video clip showing the incident). After the contact, Ennis claims that a security guard opened the gate and let the employee inside. Ennis Dep. at 308. Only then did the security guard, according to Ennis, tell Ennis that he had been blocking the gate. *Id.* at 324. Ennis suffered no physical injury as a result of the incident. *Id.* at 313.

### B. Procedural History

On August 10, 2012, Campbell filed her initial Complaint, ECF No. 1, and on January 17, 2013, Ennis filed his, No. 13–00233, ECF No. 1. After a round of amended complaints, the Court ordered the two cases consolidated on June 18, 2013. ECF No. 70.

On July 9, 2013, Plaintiffs filed a Second Amended Consolidated Complaint ("SACC"), ECF No. 73, which Defendants moved to dismiss and/or strike on August 12, 2013, ECF No. 94. On October 4, 2013, the Court granted the motion in part and denied it in part. ECF No. 120. On October 21, 2013, Plaintiffs filed a Third Amended Consolidated Complaint ("TACC"), ECF No. 124, which Defendants again moved to dismiss and/or strike on November 4, 2013, ECF No. 126. Defendants argued in their motion that the Court should dismiss Plaintiffs' free speech claims based on Article I, Section 2 of the California Constitution. ECF No. 126 at 5–12.

On April 7, 2014, the Court amended its order from October 4, 2013, clarifying that "control of property" is insufficient to transform a private party's conduct into state action for purposes of the California Constitution. ECF No. 154; *see* ECF No. 155 at 11 n.4 (explaining the reason for amending the Court's prior order). That same day, the Court granted with prejudice Defendants' Motion to Dismiss Plaintiffs' claims based on Article I, Section 2 of the California Constitution. ECF No. 155 at 15. The Court did so because "Article I, Section 2 includes a state actor limitation" and "Defendants are not state actors" under the meaning of that provision. *Id.* at 9, 13 (internal quotation marks omitted).

On April 16, 2014, Plaintiffs filed their FACC, naming FEI, Stuart, and Bailey as defendants.[5] ECF No. 158 at 1. In the FACC, Plaintiffs each asserted several causes of action, all under California law, arising out of the five incidents detailed above. Specifically, Campbell alleged eight causes of action: (1) unlawful business practices in violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code § 17200 *et seq.*; (2) violations of the Ralph Act, Cal. Civ. Code § 51.7; (3) violations of Article I, Section 2(a) of the California Constitution; (4) violations of the Bane Act, Cal. Civ. Code § 52.1; (5) claims for injunctive relief due to harass-

---

**5.** The FACC also named James Dennis ("Dennis"), Matthew Gillet ("Gillet"), and Tripp Gorman ("Gorman") as defendants. Dennis and Gillet, however, have already been dismissed and stricken from previous complaints. *See* ECF No. 154 at 26 (dismissing Dennis and Gillet from the SACC pursuant to the parties' agreement); ECF No. 155 at 14–15 (striking Dennis and Gillet from the TACC). Gorman, on the other hand, was never properly served with process. *See* ECF No. 181; *see also* ECF No. 186 (Clerk declining default against Gorman). Plaintiffs do not argue otherwise. Plaintiffs have also abandoned their claims arising out of Gorman's conduct by failing to mention any such claims in their motion papers. *See Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 (9th Cir.2005) (per curiam) (noting that a party abandoned claims not defended in opposition to a motion for summary judgment). Accordingly, the Court sua sponte STRIKES any references in the FACC to Dennis, Gillet, and Gorman. *See* Fed. R. Civ. P. 12(f)(1) (permitting the Court "on its own" to "strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter").

ment, Cal.Civ.Proc.Code § 527.6(a)-(b); (6) intentional infliction of emotional distress ("IIED"); (7) assault; and (8) battery. FACC ¶¶ 91–132. Ennis, by comparison, brought five causes of action: (1) violations of the Ralph Act, Cal. Civ. Code § 51.7; (2) violations of Article I, Section 2(a) of the California Constitution; (3) violations of the Bane Act, Cal. Civ. Code § 52.1; (4) claims for injunctive relief due to harassment, Cal.Civ.Proc.Code § 527.6(a)-(b); and (5) battery. FACC ¶¶ 96–116, 126–32.

On September 25, 2014, Defendants filed their Motion for Summary Judgment or, Alternatively, Partial Summary Judgment. Defs.' Mot. at 24. The following day, Plaintiffs filed their Motion for Partial Summary Judgment. Pls.' Mot. at 26. Although Plaintiffs' motion was untimely, the Court agreed to consider the late-filed brief. ECF No. 199. Plaintiffs opposed Defendants' motion on October 9, 2014, Pls.' Opp. at 22, while Defendants opposed Plaintiffs' motion on October 10, 2014, ECF No. 206 ("Defs.' Opp.") at 26. Defendants replied on October 16, 2014. ECF No. 208 ("Defs.' Reply") at 16. So too did Plaintiffs. Pls.' Reply at 17.

## II. LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine disputes of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 321, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell,* 547 U.S. 518, 559–60, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if

there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* at 322–23, 106 S.Ct. 2548. But on an issue for which the opposing party will have the burden of proof at trial, the party moving for summary judgment need only point out that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323, 106 S.Ct. 2548. Once the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

■ When, as here, the parties have filed cross-motions for summary judgment, the Court "review[s] each motion for summary judgment separately, giving the nonmoving party for each motion the benefit of all reasonable inferences." *Ctr. for Bio–Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't,* 533 F.3d 780, 786 (9th Cir.2008). In so doing, the Court "must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme,* 632 F.3d 526, 532 (9th Cir.2011).

## III. DISCUSSION

Having reviewed the various motion papers, it has become clear to the Court that Plaintiffs no longer assert three causes of action listed in their FACC: Plaintiffs' claims under Article I, Section 2(a) of the California Constitution; Plaintiffs' claims under section 527.6 of the California Code of Civil Procedure; and Campbell's claim for IIED. For the reasons stated in Part III.A, *infra*, the Court GRANTS summary judgment as to these three causes of action. As a result, the following causes of action remain at issue: (1) Plaintiffs' Ralph Act claims; (2) Plaintiffs' Bane Act claims; (3) Plaintiffs' battery claims; (4) Campbell's assault claim; and (5) Campbell's UCL claim. For the reasons stated in Parts III.B–F, *infra*, the Court GRANTS in part and DENIES in part Defendants' summary judgment motion as to Plaintiffs' Ralph Act and Bane Act claims. The Court DENIES Plaintiffs' motion as to those claims. The Court also DENIES both Defendants' and Plaintiffs' summary judgment motions as to Plaintiffs' battery claims and Campbell's assault and UCL claims.

### A. Plaintiffs' Abandoned Claims

To begin, the Court has already dismissed with prejudice Plaintiffs' claims based on Article I, Section 2(a) of the California Constitution. ECF No. 155 at 15. The parties also stipulated as much. *See* ECF No. 159. To the extent necessary, then, the Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' cause of action arising out of Article I, Section 2(a) of the California Constitution.

 Additionally, Plaintiffs have abandoned their claims for injunctive relief under section 527.6 of the California Code of Civil Procedure, and Campbell has abandoned her claim for IIED. Plaintiffs make no argument in support of either cause of action in their opposition to Defendants' motion. *See generally* Pls.' Opp. Plaintiffs do not even mention them. Nor do Plaintiffs mention them in connection with their own summary judgment motion. *See generally* Pls.' Mot.; Pls.' Reply. Although "summary judgment is not properly granted simply because there is no opposition," *Atilano v. Cnty. of Butte*, No. CIV. S070384 FCDKJM, 2008 WL 4078809, at *6 (E.D.Cal. Aug. 29, 2008) (citing *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir.1993)), a court "has no obligation to search the entire case file for evidence that establishes a genuine issue of fact when the nonmovant presents inadequate opposition to a motion for summary judgment," *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136–37 (9th Cir.2001). Concerning section 527.6, which provides permanent injunctive relief for persons who have "suffered harassment," Cal. Civ. Code § 527.6(a)(1), there is no evidence that Plaintiffs have endured the type of harassment covered by the statute. As in a similar case involving HTE members protesting animal walks, "Section 527.6 addresses harassment of a personal nature, such as incidents of stalking or invasions of privacy, and Plaintiffs' allegations do not describe that type of harassment." *Bolbol v. Feld Entm't, Inc. (Bolbol II )*, No. C 11–5539 PSG, 2013 WL 257133, at *12 (N.D.Cal. Jan. 23, 2013); *see* Cal. Civ. Code § 527.6(b)(1)-(3).

Concerning Campbell's claim for IIED, Plaintiffs have abandoned their argument regarding defendant Tripp Gorman ("Gorman") or the San Jose 2013 incident where Gorman allegedly taunted Campbell with references to her deceased sister. *See supra* note 3; FACC ¶¶ 71–76, 11819. Gorman, who was never properly served with process, is also no longer a defendant in this case. *See supra* note 5. Beyond the Gorman allegations, there is no evi-

dence that Defendants' conduct toward Campbell was "so extreme as to exceed all bounds of that usually tolerated in a civilized community," as required to state a claim for IIED. *Hughes v. Pair,* 46 Cal.4th 1035, 95 Cal.Rptr.3d 636, 209 P.3d 963, 976 (2009).

As Defendants have demonstrated the absence of a genuine dispute of material fact regarding these two claims, summary judgment is appropriate. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505 (explaining that "there must be evidence on which the jury could reasonably find for the plaintiff" in order to survive summary judgment); *Ramirez v. City of Buena Park,* 560 F.3d 1012, 1026 (9th Cir.2009) (affirming a district court's grant of summary judgment in defendants' favor "because Ramirez abandoned his state law claims by not addressing them in either his Motion for Partial Summary Judgment or his Opposition to Defendants' Motion for Summary Judgment"). Accordingly, the Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' cause of action arising out of section 527.6 of the California Code of Civil Procedure and GRANTS summary judgment in favor of Defendants as to Campbell's cause of action for IIED.

### B. Plaintiffs' Ralph Act Claims

■ The Ralph Act guarantees people in California "the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any [listed] characteristic." Cal. Civ. Code § 51.7(a). This statute, along with the Bane Act, was enacted to "provide a civil remedy for hate crimes." *D.C. v. Harvard–Westlake Sch.,* 176 Cal. App.4th 836, 844, 98 Cal.Rptr.3d 300 (2009); *accord Ramirez v. Wong,* 188 Cal. App.4th 1480, 1486, 116 Cal.Rptr.3d 412 (2010). To prevail on their Ralph Act claims, Plaintiffs must establish four elements: (1) Defendants committed or threatened violent acts against Plaintiffs; (2) Defendants were motivated by their perception of Plaintiffs' political affiliation; (3) Plaintiffs were harmed; and (4) Defendants' conduct was a substantial factor in causing Plaintiffs harm. *See Knapps v. City of Oakland,* 647 F.Supp.2d 1129, 1167 (N.D.Cal.2009) (citing *Austin B. v. Escondido Union Sch. Dist.,* 149 Cal.App.4th 860, 880–81, 57 Cal.Rptr.3d 454 (2007)).

■ As to the first prong, the Ralph Act requires "violence, or intimidation by threat of violence." Cal. Civ. Code § 51.7(a). True, "there is no requirement that the violence be extreme or motivated by hate." *Winarto v. Toshiba Am. Elecs. Components, Inc.,* 274 F.3d 1276, 1289 (9th Cir.2001). "[T]he plain meaning of the word 'violence,'" however, "clearly involves some physical, destructive act." *OSJ PEP Tenn. LLC v. Harris,* No. CV 14–03741 DDP MANX, 2014 WL 4988070, at *5 (C.D.Cal. Oct. 7, 2014) (interpreting the word "violence" in the Bane Act context). Violence, contrary to Plaintiffs' assertion, demands more than "mere[ ] application of physical force." Pls.' Mot. at 5. The cases Plaintiffs cite for that proposition are neither Ralph Act nor Bane Act cases, and, in any event, they suggest that violence in other contexts refers to the *unreasonable* use of physical force, not just any use. *See People v. Bamba,* 58 Cal.App.4th 1113, 1123, 68 Cal.Rptr.2d 450 (1997) ("In the context of [California's false imprisonment statute], 'violence' means the exercise of physical force used to restrain over and above the force reasonably necessary to effect such restraint" (internal quotation marks omitted)); *People v. Bravot,* 183 Cal.App.3d 93, 97, 227 Cal.Rptr. 810 (1986) (explaining that "violence" in the context of California's felonious escape statute "mean[s] any *wrongful* application of physical force" (emphasis added)).

In *Winarto,* for example, the Ninth Circuit found sufficient evidence to support a jury's finding of violence under the Ralph Act where the trial had "established beyond dispute that [defendant] kicked Winarto at least once." 274 F.3d at 1289. The court there also found sufficient evidence of a threat of violence where Winarto's co-worker, a defendant, had "kicked her or feigned kicking her on many other occasions," and where he had once "approached Winarto from behind in a stairwell, and threatened her, saying, 'chick, you better walk faster or I am going to hurt you again.'" *Id.* at 1289–90; *see also Rodriguez v. Cnty. of Contra Costa,* No. C 13–02516 SBA, 2013 WL 5946112, at *6 (N.D.Cal. Nov. 5, 2013) (finding plausible allegations of violence under the Ralph Act where "Defendants' officers arrived on scene with their guns drawn, while taunting Plaintiff and insulting him and ordering him to remain on the ground as he was being viciously attacked by a police dog"). By contrast, in *Corales v. Bennett,* 567 F.3d 554, 564, 570–71 (9th Cir.2009), the Ninth Circuit rejected the Ralph Act claims of middle school students where their vice principal "did not express any intent to commit any act of unlawful violence or to inflict bodily harm upon the students." The vice principal's threats of "police involvement, a $250 fine, and a juvenile hall sentence" for the students' truancy were insufficient to survive summary judgment. *Id.* at 559, 571; *see also Ramirez,* 188 Cal.App.4th at 1486, 116 Cal. Rptr.3d 412 (finding "no 'threat of violence' without some expression of intent to injure or damage plaintiffs or their property").

Viewing the evidence in the light most favorable to Plaintiffs, the Court finds no triable issues of fact as to whether Defendants committed or threatened violence against Campbell during the Oakland 2010 incident and against Ennis during the San Jose 2011 and Fresno 2012 incidents. In contrast, the Court does find a genuine issue of material fact as to whether Defendants committed or threatened violence against Plaintiffs at the Oakland 2012 incident and against Ennis at the San Jose 2012 incident.

### 1. Oakland 2010

██ As to Oakland 2010, Campbell alleges that some kind of light, perhaps a laser pointer, was shone at her camera and into her eyes while she was attempting to film Circus animals at night. Campbell Decl. ¶¶ 19–20; Campbell Dep. at 194–96. The green light, according to Campbell, blurred her vision for a "short period," Campbell Dep. at 196–97, but Campbell offered conflicting accounts of how long the blurriness lasted, *compare id.* at 197 (five to ten minutes), *with* Campbell Decl. ¶ 19 (ten to fifteen minutes). Campbell admits she suffered no physical injury. Campbell Dep. at 216.

The undisputed video evidence confirms the absence of a genuine issue as to whether Defendants committed or threatened violence against Campbell. *See* Ex. C to Campbell Decl. The video begins by showing Campbell standing alone and filming a structure, presumably the Oakland arena, some distance away, and a green light constantly moving in seemingly random, circular patterns and intermittently landing on Campbell's video camera for a split second. The video then shows that the source of the green light is inside the structure Campbell is filming and that the green light is coming out of the structure through a gap between a door in the structure and its doorframe. The green light is constantly moving in seemingly random, circular patterns and lands momentarily on passersby walking outside the structure. The scene outside the structure is quiet and calm. Only the intermittent voices of the passersby can be heard on the video. None of these conversations is directed at Campbell. Although physical

injury is not a requirement where violence is merely threatened, Campbell's admission that she suffered no injury further supports the Court's conclusion. *See* Campbell Dep. at 216.

In sum, there is no evidence of violence or intimidation by threats of violence under the meaning of the Ralph Act. The video shows no "physical, destructive act" was ever perpetrated or threatened against Campbell. *OSJ PEP Tenn.*, 2014 WL 4988070, at *5; *see also Bolbol v. City of Daly City (Bolbol I )*, 754 F.Supp.2d 1095, 1102, 1117 (N.D.Cal.2010) (granting summary judgment to defendants on Ralph Act claim where officer with an alleged "history of harassing animal-rights activists" at the circus "took hold of [an activist's] hand that held the camera and began to hit the hand against the vehicle" and "held [the activist's] hand in a 'pain-compliance' hold for approximately 15–20 minutes until additional [ ] officers arrived on the scene").

As Defendants have shown there is no genuine dispute as to an essential element of a Ralph Act cause of action—namely, whether violence was committed or threatened—the Court GRANTS Defendants' summary judgment motion and DENIES Plaintiffs' summary judgment motion as to Campbell's Ralph Act claim arising out of the Oakland 2010 incident.

### 2. San Jose 2011

■ As to San Jose 2011, Ennis alleges that the rope barrier was pulled against his body and that he found the incident "uncomfortable and embarrassing." Ennis Decl. ¶ 17; *see also* Ennis Dep. at 92–93 (considering it a threat or intimidation whenever the rope touches him). The video shows Ennis in broad daylight following and filming with his monopod a procession of elephants being led into a fenced-in holding area. *See* Ex. A to Ennis Decl., Clip 6. Ennis settles on a position to the right of a lamppost to film the holding area

by raising his monopod high in the air. FEI employees hold a rope between Ennis and the elephants. The rope is to the right of Ennis near the bottom of his right leg. After showing the elephants entering the holding area, the video pans back to Ennis, who has moved a couple feet away from the lamppost. The rope barrier has been extended to run along the left side of the lamppost and is wrapped around the lamppost. Ennis stands to the right of the lamppost. Giving Ennis the benefit of the doubt, although the video does not show it, one can infer that the rope may rest against some portion of the right side of Ennis's shirt. Ennis is filming the elephants throughout the video. The FEI employees holding the rope are several feet away from Ennis and are not paying Ennis any attention. No one speaks to Ennis on the video. The video does not show the rope being wrapped around Ennis's torso, as Ennis claims. *See* Ennis Decl. ¶ 17. Nor does the video show FEI employees "pulling the rope taut" against Ennis. *Id.* The scene is calm and largely quiet. Ennis never shows the slightest indication of discomfort, embarrassment, or fear. Though injury is not a requirement, Ennis alleges none as a result of this incident. *See* Ennis Decl. ¶¶ 16–17.

Once again, there is no evidence of violence or intimidation by threats of violence under the meaning of the Ralph Act. The undisputed video evidence shows no "physical, destructive act" was ever perpetrated or threatened against Ennis. *OSJ PEP Tenn.*, 2014 WL 4988070, at *5; *see also Bolbol I*, 754 F.Supp.2d at 1102, 1117 (granting summary judgment to defendants on Ralph Act claim where officer charged with "enforcement of the barricade" physically grabbed an animal rights activist's hand, hit it against a vehicle, and held it for 15–20 minutes until additional officers arrived).

As Defendants have shown there is no genuine dispute as to an essential element of a Ralph Act cause of action—namely, whether violence was committed or threatened—the Court GRANTS Defendants' summary judgment motion and DENIES Plaintiffs' summary judgment motion as to Ennis's Ralph Act claim arising out of the San Jose 2011 incident.

### 3. Fresno 2012

■■ As to Fresno 2012, Ennis claims that he was standing on a public sidewalk in broad daylight attempting to film animals over a wall when Circus employees threw ice and two sticks at his camera. *Ennis Decl.* ¶ 18. Ennis testified that none of the objects were thrown directly at his person, and that the only contact he experienced was when one of the two sticks ricocheted off a nearby pillar and hit his shoulder. *Ennis Dep.* at 228, 235. The undisputed video evidence shows that Ennis was standing behind a wall with his camera mounted atop a monopod so that he could film over the wall and down into the area where he anticipated the animals would be brought. *See* Ex. A to Ennis Decl., Clips 11–13. The clip from the perspective of Ennis's camera shows several young male Circus performers in their uniforms (some of whom have their shirts off and are bare-chested) looking up at the camera. Ex. A to Ennis Decl., Clip 13. An off-screen performer throws a stick, which hits the side of Ennis's camera. A few seconds later, the video shows a bare-chested Circus performer obtaining a running start before tossing several pieces of ice in the camera's general direction. None of the ice contacts Ennis's camera. Other than a few laughs, the scene was largely quiet. Ennis, who had standing behind a solid wall above where the Circus performers had congregated, was hidden from their view. Though neither physical injury nor property damage is a requirement, Ennis alleges none as a result of this incident. *See Ennis Dep.* at 232, 235.

Once more, there is no evidence of violence or intimidation by threats of violence under the meaning of the Ralph Act. The undisputed video evidence shows no "physical, destructive act" was ever perpetrated or threatened against Ennis. *OSJ PEP Tenn.*, 2014 WL 4988070, at *5; *see also Bolbol I*, 754 F.Supp.2d at 1102, 1117. As Defendants have shown there is no genuine dispute as to an essential element of a Ralph Act cause of action—namely, whether violence was committed or threatened—the Court GRANTS Defendants' summary judgment motion and DENIES Plaintiffs' summary judgment motion as to Ennis's Ralph Act claim arising out of the Fresno 2012 incident.

### 4. Oakland 2012

■■ As to Oakland 2012, the Court finds a genuine dispute as to whether Defendants intimidated Plaintiffs with threats of violence. The undisputed video evidence, which lasts over six minutes, shows a nighttime animal walk that becomes contentious and almost chaotic for a few moments.

Toward the start of the video, the viewer sees an FEI employee, whom Campbell identifies as Billy Murray ("Murray"), walking next to Campbell and telling her at least six times to "get up on the sidewalk." Ex. A to Campbell Decl. at 0:23–0:34. After she refuses, Murray steps onto the pathway next to the street where the animals are walking and pulls the rope against Campbell's torso as she continues to walk. *Id.* at 0:35–0:36. Murray then returns to the street level and begins to raise his voice at Campbell, demanding that she "get on the sidewalk now, ma'am!" *Id.* at 0:360:45. In so doing, Murray can be seen using his body to direct Campbell onto the pathway, to which Campbell responds, "Don't fucking push me." *Id.* at 0:40–0:41. Recognizing that the situation has become tense between Campbell and

Murray, Stuart approaches, raises an open palm to Murray as if to tell him to calm down, and tells Campbell in a normal speaking voice to "please get up on the sidewalk." *Id.* at 0:45–0:48. Stuart then tells Campbell again, "You gotta be up on here," referring to the rocky pathway adjacent to the street. *Id.* at 0:52–0:53.

Another half-minute passes without incident, when Stuart tells Campbell, "I'll leave you alone if you go up on the sidewalk." Ex. A to Campbell Decl. at 1:37–1:38. Walking stride for stride with Campbell, Stuart begins to use his larger frame to direct Campbell toward the pathway. *Id.* at 1:39–1:40. Campbell then says, "Get your body off of me, dude." *Id.* at 1:41–1:42. Stuart tells Campbell that she is "into the rope," to which Campbell replies, "That doesn't give you any fucking right to put your body on me." *Id.* at 1:43–1:47. Campbell next accuses Stuart of putting his "hands on [her]," to which Stuart asks, "Did my hand go on you?" *Id.* at 1:50–1:52. Acknowledging that Stuart did not in fact put his hands on her, Campbell tells him that he made contact with her body. *Id.* at 1:53; *see also* Campbell Decl. ¶ 14 (stating "more accurately" that Stuart "pushed his body against [hers]"). Campbell later testified that Stuart's "stomach [was] protruding, and that's what he was pushing against [her]." Campbell Dep. at 113. Stuart denies he ever made contact with Campbell. Stuart Dep. at 55. The video, however, is ambiguous on this point, and at the summary judgment stage the Court must draw all reasonable inferences in Campbell's favor.

A minute or so after the interaction with Stuart, a different FEI employee is heard on the video asking Campbell to get on the sidewalk. Ex. A to Campbell Decl. at 3:16. Campbell tells the employee, "Get your hands off me!" to which the employee immediately replies, "My hands are not on you." *Id.* at 3:17–3:20. Campbell then responds, "Your body is pushing against me; you're not allowed to do that." *Id.* at 3:20–3:22. Another minute or so elapses when Stuart reappears explaining to the spectators Stuart's understanding that the Baldwin Street entrance to the arena is private property. *Id.* at 4:37–5:01. In response, the spectators yell at FEI employees that the entrance is open to the public, and the spectators begin to push through the rope past FEI employees and security guards. *Id.* at 5:04–5:35. The Court notes that the yelling and profanity in the video do not come from FEI employees or security guards.

At one point, Stuart can be seen stepping in front of a spectator and using his larger backside to block the person from proceeding. *Id.* at 4:53–4:55. Stuart relents after a couple seconds. *Id.* at 4:55. During the "commotion," Campbell alleges that she was forced to jump over a metal barricade in order to make her way through the entrance. Campbell Dep. at 132–34. Her leap was not captured on video. Campbell also claims that she sustained a bruise to her leg as a result of the jump. *Id.* at 134. She testified, however, that even though the bruise lasted about a month, she could not remember which leg she had bruised, and she took no pain medication for it. *Id.* at 136–38.[6] Eventually, the spectators were allowed to follow the procession through the Baldwin Street entrance. *See* Ex. A to Campbell Decl. at 5:50–6:15.

As to Ennis, the video evidence shows that Ennis was filming at the head of the Oakland 2012 elephant procession when Stuart and a security guard informed En-

---

6. Campbell testified that she took pictures of the bruise. Campbell Dep. at 135. Those pictures were not included with Plaintiffs' motion papers, so the Court has not seen them.

nis that the Baldwin Street entrance was private property and that he could proceed no further. Ex. A to Ennis Decl., Clip 8 at 0:07–0:13. Ennis protests, argues that the entrance is "open to the public," and demands that Stuart and the security guard "get out of [his] way." *Id.* at 0:12–0:26. As Ennis presses forward into Stuart, Ennis yells, "Get off of me, man!" *Id.* at 0:26–0:28. Stuart replies, "I didn't touch you," but Ennis repeats his demand for Stuart to "get off [him]." *Id.* at 0:28–0:31. At that moment, Stuart reaches around Ennis with his right arm and appears to make contact with Ennis's body. *Id.* at 0:32. In his declaration, Ennis says, "[Stuart] reached over and hit me in the back," Ennis Decl. ¶ 20, but Ennis testified later that Stuart "had his arms almost wrapped around [him]" before "he reached over my side and . . . put his hand on my back," Ennis Dep. at 263. Stuart denies ever touching Ennis. Stuart Dep. at 78–79. Whether and to what extent Ennis may have been touched by Stuart is a question of fact for the jury.

■ In light of this video evidence, as well as Plaintiffs' declarations and deposition testimony, the Court finds a genuine dispute as to whether some of Defendants' actions toward Plaintiffs at the Oakland 2012 incident amount to intimidation by threats of violence under the meaning of the Ralph Act. What's more, triable issues of fact exist as to whether Defendants' conduct was motivated by Plaintiffs' political affiliation, the Ralph Act's second prong. The Court agrees with Plaintiffs that their animal rights activism and membership in HTE constitute a "political affiliation" for purposes of the Ralph Act. *See McCalden v. Cal. Library Ass'n,* 955 F.2d 1214, 1220–21 (9th Cir.1990) (concluding that California courts would interpret the Ralph Act's political affiliation requirement "very broadly" to include Holocaust deniers), *superseded on other grounds as stated in Harmston v. City & Cnty. of S.F.,*

627 F.3d 1273 (9th Cir.2010); *Ennis v. City of Daly City,* No. C–09–05318–MHP, 2011 WL 672655, at *8 (N.D.Cal. Feb. 16, 2011) (treating Ennis's "animal rights activism" as a "political affiliation" for purposes of the Ralph Act). Considering the lengthy history of discord between HTE members, Plaintiffs included, and the Circus, *see Cuviello v. City of Oakland,* 434 Fed.Appx. 615, 617 (9th Cir.2011) (explaining that the animal walk videos reveal "friction between Plaintiffs and circus employees"), the Court finds a reasonable jury could conclude that Defendants' alleged misconduct at the Oakland 2012 incident was motivated by Plaintiffs' stance on animal rights, *see Bolbol II,* 2013 WL 257133, at *6 (denying summary judgment on animal rights activists' Ralph Act claims because "a reasonable jury could look at Plaintiffs' video evidence and conclude that Feld's employees knew that they engaged in their protests because of their positions on animal rights"). Finally, triable issues of fact exist as to whether Plaintiffs were harmed as a result of Defendants' conduct at the Oakland 2012 incident, the third and fourth prongs under the Ralph Act. *See, e.g.,* Ennis Decl. ¶ 23 (alleging "emotional distress . . . as a result of the harassment by the Circus"); Campbell Decl. ¶ 15 (describing the bruise to her leg).

As both parties have failed to show the absence of a genuine dispute as to whether Defendants' conduct at the Oakland 2012 incident violated the Ralph Act, the Court DENIES Defendants' summary judgment motion and DENIES Plaintiffs' summary judgment motion.

### 5. San Jose 2012

■ As to San Jose 2012, Ennis alleges that an unknown FEI employee "purposely walked into" him while Ennis was standing alone on a public sidewalk attempting to film Circus animals over the back gate

of the arena. Ennis Decl. ¶ 21. The undisputed video evidence shows the employee approach Ennis in broad daylight, extend his right arm out, and push Ennis's left shoulder. Ex. A to Ennis Decl., Clip 1. The shove was of sufficient force to dislodge Ennis from where he had been standing. After the push, Ennis lowered his monopod and began filming the employee as he waited for a security guard to open the gate. The employee glances at Ennis while waiting, but it is unclear whether any words were exchanged. When asked whether the employee had said anything to him, Ennis testified, "I recall him saying something about get out of my way." Ennis Dep. at 311; see also id. at 324. A short while later, the video shows the gate opening up and the employee walking inside. Ennis testified that the security guard who had opened the gate said to Ennis, "Could you please move. You are blocking the gate." Id. at 324. Even though Ennis disputes that he was blocking the gate, see id., Ennis does not dispute that the guard told him so. Once the gate was closed, the video shows Ennis walking toward a nearby squad car, presumably to inform the police about what had just taken place.

In light of the undisputed video evidence, as well as Ennis's declaration and deposition testimony, the Court finds a genuine dispute as to whether Defendants' actions toward Ennis at the San Jose 2012 incident constitute violence or intimidation by threats of violence under the meaning of the Ralph Act. For the reasons discussed in Part III.B.4, supra, the Court also finds triable issues of fact as to whether Defendants' conduct caused Ennis harm and was motivated by Ennis's political affiliation as an animal rights activist. See Bolbol II, 2013 WL 257133, at *6; Ennis Decl. ¶ 23.

As both parties have failed to show the absence of a genuine dispute as to whether Defendants' conduct at the San Jose 2012 incident violated the Ralph Act, the Court DENIES Defendants' summary judgment motion and DENIES Plaintiffs' summary judgment motion.

## C. Plaintiffs' Bane Act Claims

██ The Bane Act provides a civil cause of action for "[a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of [California], has been interfered with, or attempted to be interfered with" through actual or attempted "threats, intimidation, or coercion." Cal. Civ. Code § 52.1(a)-(b). "The word 'interferes' as used in [§ 52.1] means 'violates.' " Barsamian v. City of Kingsburg, 597 F.Supp.2d 1054, 1064 (E.D.Cal.2009) (quoting Austin B., 149 Cal.App.4th at 883, 57 Cal.Rptr.3d 454). Like the Ralph Act, the Bane Act "was adopted to stem a tide of hate crimes," but it is not limited to such crimes. Venegas v. Cnty. of L.A., 32 Cal.4th 820, 11 Cal.Rptr.3d 692, 87 P.3d 1, 14 (2004). That said, the statute "does not extend to all ordinary tort actions." Id.

██ To prevail on a Bane Act claim, thus, Plaintiffs must make two showings: (1) Defendants interfered with Plaintiffs' constitutional or statutory rights; and (2) that interference was accompanied by actual or attempted threats, intimidation, or coercion. See Venegas, 11 Cal.Rptr.3d 692, 87 P.3d at 14; Barsamian, 597 F.Supp.2d at 1064. Only if Plaintiffs can first establish that Defendants violated a constitutional or statutory right can the Court consider whether such interference was the product of threats, intimidation, or coercion.

Plaintiffs premise their Bane Act claims on a host of alleged statutory and constitutional violations under California law. See FACC ¶ 109. These include violations of

(1) section 3479 of the California Civil Code; (2) Plaintiffs' paramount right to use public streets; (3) section 647c of the California Penal Code; (4) section 1708 of the California Civil Code; (5) Article I of the California Constitution; (6) section 43 of the California Civil Code; and (7) the Ralph Act. The Court addresses each Bane Act predicate in turn.

### 1. California Civil Code § 3479

Plaintiffs first allege Bane Act liability on the basis that their "right against unlawful obstruction of the free use of any street or public property," as provided in section 3479 of the California Civil Code, was violated. FACC ¶ 109(A). Section 3479 is a nuisance statute prohibiting, inter alia, anything that "unlawfully obstructs the free passage or use, in the customary manner, of ... any public park, square, street, or highway." Cal. Civ. Code § 3479. As private persons, Plaintiffs may maintain a public nuisance action only if they are "specially" injured. *Id.* § 3493.

Plaintiffs, however, provide no authority suggesting that a breach of section 3479 may serve as a predicate for Bane Act liability. In addition, Plaintiffs in their motion papers make no reference to section 3479 as a basis for Bane Act liability. *See generally* Pls.' Mot.; Pls.' Opp.; Pls.' Reply. In fact, the singular reference to section 3479 in Plaintiffs' briefing appears in their reply supporting their partial summary judgment motion. *See* Pls.' Reply at 6. This fleeting reference, moreover, appears in the context of Plaintiffs' battery claims and does not mention the Bane Act. *See id.* The Court therefore concludes that Plaintiffs have abandoned section 3479 as a predicate for Bane Act liability. *Ramirez*, 560 F.3d at 1026.

 Even if the claim could serve as a Bane Act predicate and had not been abandoned, summary judgment would still be appropriate because there is no evidence that Plaintiffs were "specially" injured by Defendants' alleged conduct. Cal. Civ. Code § 3493. During the Oakland 2012 incident, the evidence shows that all members of the public, activists and non-activists alike, were kept outside the rope barrier and blocked temporarily from entering the Baldwin Street entrance. *See* Ex. A to Campbell Decl.; Voigt Dep. at 50. Plaintiffs, therefore, cannot show special injury because there is no evidence that Plaintiffs were singled out such that only they were prevented from passing through the gate. *See Bolbol II*, 2013 WL 257133, at *8 (granting summary judgment on Bane Act claim predicated on section 3479 where HTE plaintiffs had failed to "show that they were 'specially' injured by any of Feld's alleged nuisance actions"); *see also Kempton v. City of L.A.*, 165 Cal.App.4th 1344, 1349, 81 Cal.Rptr.3d 852 (2008) (holding that if an injury caused by blocking a public right-of-way "would be suffered by all members of the public," it would not alone "constitute a special injury to appellants actionable for public nuisance").

Accordingly, the Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' Bane Act cause of action predicated on a violation of section 3479 of the California Civil Code.

### 2. Paramount Right to Use Public Streets

Plaintiffs next claim Bane Act liability on the basis that their "paramount right" as members of the public "to use the public streets" was violated. FACC ¶ 109(B). "[A]s members of the general public," Plaintiffs argue that they "had a pre-existing and paramount right to access the public streets in each of the cities where the underlying incidents took place." Pls.' Opp. at 4–5. Plaintiffs, however, cite no actual statutory or constitutional provision in support of this claim. Nor do Plaintiffs cite any authority to suggest that Bane Act liability may be premised on a viola-

tion of a person's right to use the public streets. Cf. *Bolbol II*, 2013 WL 257133, at *8 (granting summary judgment on Bane Act claim where plaintiffs had failed to provide "any case law extending the protections of Section 52.1 to any violation of Section 3479").

 Even if such a violation could provide a basis for Bane Act liability, there is no evidence to suggest that Plaintiffs' right to use the public streets was any greater than that of Defendants. If anything, the evidence shows that it was Defendants who enjoyed a superior right of access at the time of the relevant incidents because they obtained municipal permits prior to staging the animal walks. There is no dispute, for example, that Defendants obtained a special events permit for the Oakland 2012 walk, and that the walk was led by police escorts. *See* Bailey Decl. ¶¶ 3–5; Bailey Dep. at 46–54, 63–64, 85–88. Plaintiffs, it is true, allege that Defendants exceeded the scope of the permit by occupying the entirety of Baldwin Street and "deny[ing] Plaintiffs minimal space to walk along the side of the street." Pls.' Opp. at 6, 16–17. Yet Plaintiffs offer no evidence to support their assertion that Defendants violated permitting laws. All Plaintiffs cite is Bailey's deposition testimony indicating that he worked with the Oakland police department to obtain the special events permit. *See* Pls.' Opp. at 17 (citing Bailey Dep. at 46–49, 61–66). Again, this testimony suggests only that Defendants acted in accordance with law by obtaining a permit to hold the animal walk.

Accordingly, the Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' Bane Act cause of action predicated on a violation of Plaintiffs' right to use the public streets. To the extent Plaintiffs moved for summary judgment on the issue, *see* Pls.' Mot. at 23–24, the Court DENIES that motion.

### 3. California Penal Code § 647c

 Plaintiffs next allege Bane Act liability on the basis that their "right to be free from the willful and malicious obstruction of [their] free movement" in public, as protected by section 647c of the California Penal Code, was violated. FACC ¶ 109(C). Under this criminal statute, "[e]very person who willfully and maliciously obstructs the free movement of any person on any street, sidewalk, or other public place or on or in any place open to the public is guilty of a misdemeanor." Cal.Penal Code § 647c. To establish criminal malice under this law, Plaintiffs must show that Defendants acted with either (1) "a wish to vex, annoy, or injure" Plaintiffs; or (2) "an intent to do a wrongful act" banned by law. *Ramey v. Murphy*, 165 Cal.App.3d 502, 510, 212 Cal.Rptr. 14 (1985).

 Plaintiffs offer no authority to suggest that a violation of section 647c—or any other criminal statute, for that matter—may serve as a basis for Bane Act liability. The Court, for its part, has found none. As the California courts have explained, "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B.*, 149 Cal.App.4th at 883, 57 Cal. Rptr.3d 454. Plaintiffs, however, appear to have invented a statutory right for Bane Act purposes based on the fact that a criminal prohibition exists in California on the willful and malicious obstruction of another's free movement. As Plaintiffs have no civil cause of action under section 647c, the Court declines to allow Plaintiffs to rely on it as a predicate for a separate civil cause of action. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Den-*

*ver, N.A.,* 511 U.S. 164, 190, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) (explaining that courts are "quite reluctant to infer a private right of action from a criminal prohibition alone"); *Johnson v. Wennes,* No. 08CV1798–L(JMA), 2009 WL 1228500, at *4 (S.D.Cal. May 5, 2009) ("It is well settled that a private citizen may not use the courts as a means of forcing a criminal prosecution.").

Accordingly, the Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' Bane Act cause of action predicated on a violation of section 647c of the California Penal Code. The Court also DENIES Plaintiffs' summary judgment motion on this issue.

#### 4. California Civil Code § 1708

Plaintiffs next claim Bane Act liability on the basis that their "right to be free from injury of property and infringement upon rights" under section 1708 of the California Civil Code was violated. FACC ¶ 109(D). Section 1708 provides that "[e]very person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his or her rights." Cal. Civ. Code § 1708. With respect to "injuring the person," this provision "requires 'harm' in the sense of detrimental physical changes to the body." *Duarte v. Zachariah,* 22 Cal.App.4th 1652, 1661, 28 Cal.Rptr.2d 88 (1994). This provision "states only a general principle of law" and does not provide a private cause of action, *Ley v. State,* 114 Cal.App.4th 1297, 1306, 8 Cal.Rptr.3d 642 (2004), and Plaintiffs cite no authority to suggest that Bane Act liability may be premised on a breach of section 1708.

In their motion papers, moreover, Plaintiffs make no reference to section 1708 as a basis for Bane Act liability. *See generally* Pls.' Mot.; Pls.' Opp.; Pls.' Reply. In fact, Plaintiffs do not even mention the provision. The Court therefore concludes that Plaintiffs have abandoned section 1708 as a

predicate for Bane Act liability. *See Ramirez,* 560 F.3d at 1026. With no argument in support of this claim, the Court has no way of knowing which right or rights guaranteed by section 1708 Plaintiffs are alleging have been violated. *See* FACC ¶ 109(D) (referencing vaguely "infringement upon rights"). The Court declines to speculate. *See Bias v. Moynihan,* 508 F.3d 1212, 1219 (9th Cir.2007) ("A district court does not have a duty to search for evidence that would create a factual dispute."). To the extent Plaintiffs allege only "injury of property," FACC ¶ 109(D), the evidence shows that there was no property damage resulting from Defendants' conduct, *see* Ennis Dep. at 232 (testifying that the stick hitting his camera during the Fresno 2012 incident caused no property damage).

Accordingly, the Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' Bane Act cause of action predicated on a violation of section 1708 of the California Civil Code. *See Bolbol II,* 2013 WL 257133, at *8–9 (granting summary judgment as to HTE plaintiffs' Bane Act claim predicated on section 1708); *Ennis,* 2011 WL 672655, at *7 (dismissing Ennis's Bane Act claim predicated on section 1708).

#### 5. Article I of the California Constitution

Plaintiffs next allege Bane Act liability on the basis that their rights to free speech, peaceful assembly, and liberty, as guaranteed by Article I of the California Constitution, were violated. FACC ¶ 109(E)-(G). Article I, Section 2(a) of the California Constitution provides: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press. Cal. Const. art. I, § 2(a). The Court, however, has already ruled

that a violation of this provision requires "state action" and that "Defendants are not state actors under Article I, Section 2 of the California Constitution." ECF No. 155 at 9–13. In declining to grant Plaintiffs leave to amend, the Court decided that it would "not give Plaintiffs a seventh bite at the apple." *Id.* at 13. Now many months later, the Court certainly will not allow an eighth. *United States v. Smith,* 389 F.3d 944, 948 (9th Cir.2004) ("Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." (internal quotation marks omitted)).[7] As there can be no violation of this provision, there can be no Bane Act liability as a matter of law. *See Venegas,* 11 Cal. Rptr.3d 692, 87 P.3d at 14.

Plaintiffs' other constitutional predicates fare no better. Article I, Section 3(a) guarantees Californians "the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good." Cal. Const. art. I, § 3(a). All Plaintiffs allege here is that Defendants "have no right to restrict the right to speech or assembly in streets and other public forums." Pls.' Opp. at 7. Plaintiffs make no argument–and there is no evidence to support a claim–that Defendants actually violated their right to assemble freely. What evidence does exist shows that Plaintiffs were allowed to assemble and protest, *see* Ex. A to Campbell Decl. (video clip showing Oakland 2012 animal walk and protest).

Furthermore, Article I, Section 1 guarantees a right to "liberty." Cal. Const. art. I, § 1. Yet again, however, Plaintiffs fail to mention this provision in their briefing, let alone in connection with their Bane Act claim. There is no evidence to explain how the facts Plaintiffs allege give rise to a violation of their right to liberty such that Bane Act liability may attach. Simply alleging this provision as a Bane Act predicate in their FACC is insufficient. *See Bolbol II,* 2013 WL 257133, at *10–11 (granting summary judgment on Bane Act claim where plaintiffs "failed to explain how the facts they allege give rise to violations of [Article I, Section 1]").

---

7. Plaintiffs have filed a Motion for Leave to File a Fifth Amended Complaint in order to reassert liability under Article I, Section 2(a) of the California Constitution and to add Alex Petrov ("Petrov"), the animal superintendent at the Oakland 2012 incident, as a defendant. ECF No. 216. Plaintiffs, however, point to no "substantially different" evidence or "other changed circumstances" warranting the Court to revisit its prior rulings that Defendants are not state actors. *United States v. Alexander,* 106 F.3d 874, 876 (9th Cir.1997). The Court also finds that amendment would be futile. *See Mujica v. AirScan Inc.,* 771 F.3d 580, 593 n. 8 (9th Cir.2014). Further, Plaintiffs have not provided "good cause" to add an additional defendant. Fed. R. Civ. P. 16(b)(4). The "good cause" inquiry "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992). Here, Plaintiffs' request to add Petrov as a defendant could have been made months ago. *See* ECF No. 216 at 8–9. Plaintiffs offer no persuasive explanation for the delay, and Defendants would be prejudiced by allowing amendment at this late date, months after the close of expert discovery. For these reasons, the Court DENIES Plaintiffs' Motion for Leave to File a Fifth Amended Complaint. *See Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 892 (9th Cir.2010) (explaining that a court properly denies leave to amend where there is "undue delay" or "repeated failure to cure deficiencies by amendments previously allowed").

The Court also DENIES Defendants' Motion for Sanctions under 28 U.S.C. § 1927, *see* ECF No. 221, because the Court is not convinced that Plaintiffs' counsel has acted with sufficient "recklessness" in filing the motion for leave to amend, *In re Girardi,* 611 F.3d 1027, 1061 (9th Cir.2010).

Accordingly, the Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' Bane Act cause of action predicated on a violation of Plaintiffs' rights under Article I of the California Constitution. To the extent Plaintiffs moved for summary judgment on the issue, *see* Pls.' Mot. at 18, 23–24, the Court DENIES that motion.

### 6. California Civil Code § 43

 Plaintiffs next claim Bane Act liability on the basis that their "right to be free from bodily harm," as secured by section 43 of the California Civil Code, was violated. FACC ¶ 109(H). Section 43 guarantees, inter alia, a person's "right of protection from bodily restraint or harm." Cal. Civ. Code § 43. "The phrase 'right of protection from bodily restraint or harm' refers simply to an individual's right to be free from physical attack or the threat thereof." *Atilano*, 2008 WL 4078809, at *6 (quoting *People v. Lashley*, 1 Cal.App.4th 938, 951, 2 Cal.Rptr.2d 629 (1991)) (internal quotation marks omitted). Plaintiffs provide no authority suggesting that section 43 may serve as a predicate for Bane Act liability. The Court, however, has found several cases in which plaintiffs asserted Bane Act liability based on section 43 and courts elected not to dismiss those claims as a matter of law. *See, e.g., Medrano v. Kern Cnty. Sheriff's Officer*, 921 F.Supp.2d 1009, 1015 n. 2 (E.D.Cal.2013); *see also Bolbol v. City of Daly City*, No. C–09–1944 EMC, 2011 WL 3156866, at *7 (N.D.Cal. July 26, 2011) (denying defendants' "motion to dismiss the § 52.1 claim based on a violation of § 43"). The Court will therefore allow Plaintiffs to proceed on this theory of Bane Act liability.

 For the reasons stated in Part III.B., *supra*, the Court finds a triable issue of fact as to whether Defendants' conduct at the Oakland 2012 and San Jose 2012 incidents violated Plaintiffs' right to be free from bodily harm or the threat thereof under section 43. *See* Ex. A to Campbell Decl.; Ex. A to Ennis Decl., Clips 1, 8–10. The Court also finds a genuine dispute as to whether that alleged violation of section 43 was accompanied by actual or attempted threats, intimidation, or coercion, the Bane Act's second prong. The Court finds no genuine dispute regarding the Oakland 2010, San Jose 2011, and Fresno 2012 incidents. The undisputed video evidence of those three incidents provides no basis for a reasonable jury to conclude that Plaintiffs' "right to be free from physical attack or the threat thereof" was violated. *Atilano*, 2008 WL 4078809, at *6 (internal quotation marks omitted); *see* Ex. C to Campbell Decl.; Ex. A to Ennis Decl., Clips 6, 1113.

Accordingly, as both parties have failed to show the absence of a genuine dispute as to whether Defendants' conduct at the Oakland 2012 and San Jose 2012 incidents violated the Bane Act by way of section 43 of the California Civil Code, the Court DENIES Defendants' summary judgment motion and DENIES Plaintiffs' summary judgment motion with respect to those incidents. The Court GRANTS Defendants' summary judgment motion and DENIES Plaintiffs' summary judgment motion with respect to the Oakland 2010, San Jose 2011, and Fresno 2012 incidents.

### 7. California Civil Code § 51.7 (Ralph Act)

 Finally, Plaintiffs argue in their summary judgment motion that Defendants' alleged violation of the Ralph Act provides a basis for liability under the Bane Act. *See* Pls.' Mot. at 15, 17. This argument fails because Plaintiffs never pled the Ralph Act as a predicate for liability under the Bane Act. *See* FACC ¶ 109; *see also Bergman v. Bank of Am.*, No. C–13–00741 JCS, 2013 WL 5863057, at *20 (N.D.Cal. Oct. 23, 2013) ("Because this assertion is not in the Complaint, the

Court need not address it."); *Lavenue v. Edmunds,* No. CV 10–1479–PHX–DGC, 2010 WL 2838383, at *1 (D.Ariz. July 20, 2010) (declining to reach a basis for federal question jurisdiction because "this claim is not in the complaint"). Even if Plaintiffs had so pled, they provide no authority to suggest that the Ralph Act may serve as a Bane Act predicate. What authority the Court has found suggests the opposite. *See Bolbol II,* 2013 WL 257133, at *11 (granting summary judgment because "the court does not believe that a violation of Section 51.7 can be the basis for a Section 52.1 claim").

Accordingly, the Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' Bane Act cause of action predicated on a violation of section 51.7 of the California Civil Code. The Court also DENIES Plaintiffs' summary judgment motion on this issue.

### 8. Conclusion

Because the Court finds triable issues of fact that Defendants' conduct at the Oakland 2012 and San Jose 2012 incidents violated the Bane Act by way of section 43 of the California Civil Code, the Court DENIES Defendants' summary judgment motion and DENIES Plaintiffs' summary judgment motion as to the section 43 predicate only and only with respect to the Oakland 2012 and San Jose 2012 incidents. The Court GRANTS summary judgment in favor of Defendants as to each of Plaintiffs' remaining Bane Act causes of action, and DENIES Plaintiffs' summary judgment motion with respect to the remaining Bane Act causes of action asserted in Plaintiffs' motion.

### D. Plaintiffs' Battery Claims

"To prevail on a claim of battery under California law, a plaintiff must establish that: (1) the defendant touched the plaintiff or caused the plaintiff to be touched with the intent to harm or offend the plaintiff; (2) the plaintiff did not consent to the touching; (3) the plaintiff was harmed or offended by defendant's conduct; and (4) a reasonable person in plaintiff's situation would have been offended by the touching." *Avina v. United States,* 681 F.3d 1127, 1130–31 (9th Cir.2012). It is well-settled under California law "that 'the least touching' may constitute battery." *People v. Mansfield,* 200 Cal. App.3d 82, 88, 245 Cal.Rptr. 800 (1988). "In other words, *force* against the person is enough; it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave any mark." *Id.*

For the reasons stated in Part III.B, *supra,* the Court finds a triable issue of fact as to whether Defendants' conduct at the Oakland 2012 and San Jose 2012 incidents amounted to battery against Campbell and Ennis under California law. *See* Ex. A to Campbell Decl.; Ex. A to Ennis Decl., Clips 1, 8–10. The Court finds no genuine dispute regarding the Oakland 2010, San Jose 2011, and Fresno 2012 incidents. The undisputed video evidence of those three incidents provides no basis for a reasonable jury to conclude that Defendants touched Plaintiffs (or caused them to be touched) in an objectively offensive manner. *See* Ex. C to Campbell Decl.; Ex. A to Ennis Decl., Clips 6, 11–13.

As both parties have failed to show the absence of a genuine dispute as to whether Defendants' conduct at the Oakland 2012 and San Jose 2012 incidents, constituted battery under California law, the Court DENIES Defendants' summary judgment motion and DENIES Plaintiffs' summary judgment motion with respect to those incidents. The Court GRANTS Defendants' summary judgment motion and DENIES Plaintiffs' summary judgment motion with respect to the Oakland 2010, San Jose 2011, and Fresno 2012 incidents.

### E. Campbell's Assault Claim

"Under California law, to prevail on the tort of assault, the plaintiff must establish that: (1) the defendant threatened to touch the plaintiff in a harmful or offensive manner; (2) it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the defendant's conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the plaintiff's harm." *Avina*, 681 F.3d at 1130. As with battery, "[p]hysical injury is not a required element" of assault. *Kiseskey v. Carpenters' Trust for S. Cal.*, 144 Cal.App.3d 222, 232, 192 Cal.Rptr. 492 (1983).

For the reasons stated in Part III.B, *supra*, the Court finds a triable issue of fact as to whether Defendants' conduct at the Oakland 2012 incident amounted to assault against Campbell under California law. As both parties have failed to show the absence of a genuine dispute as to whether Defendants' conduct at the Oakland 2012 incident constituted assault under California law, the Court with respect to that incident DENIES Defendants' summary judgment motion and DENIES Plaintiffs' summary judgment motion.

Regarding the Oakland 2010 incident, the only other incident involving Campbell, the undisputed video evidence reveals no threat that Campbell would be touched in a harmful or offensive manner on account of the randomly flashing green light. *See* Ex. C to Campbell Decl. With respect to the Oakland 2010 incident, the Court GRANTS Defendants' summary judgment motion and DENIES Plaintiffs' summary judgment motion.

### F. Campbell's UCL Claim

"By proscribing any unlawful business practice, the UCL borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 n. 8 (9th Cir.2011) (alteration and internal quotation marks omitted). "Virtually any law federal, state or local can serve as a predicate for an action under [the UCL]." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal.App.4th 700, 718, 113 Cal. Rptr.2d 399 (2001). "If a plaintiff cannot state a claim under the predicate law, however, [the UCL] claim also fails." *Stokes v. CitiMortgage, Inc.*, No. CV 14–00278 BRO SHX, 2014 WL 4359193, at *11 (C.D.Cal. Sept. 3, 2014) (internal quotation marks omitted). To establish standing under the UCL, a plaintiff must demonstrate that she "suffered injury in fact and ... lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *see Ogden v. Bumble Bee Foods, LLC*, No. 5:12–CV–01828–LHK, 2014 WL 27527, at *7 (N.D.Cal. Jan. 2, 2014).

To establish standing under the UCL, Campbell has alleged that Defendants' conduct in general forced her to "incur substantial additional expense in order to purchase memory cards." FACC ¶ 94. During discovery, Defendants asked Campbell for details about "the additional memory cards" referenced in the complaint. ECF No. 208–2, Campbell Third Supplemental Response to FEI's Special Interrogatories at 4. In response, Campbell listed four different types of memory: (1) eighteen Mini DVDs; (2) twenty Mini DV tapes; (3) one 2GB SD card; and (4) two 32GB SD cards. *Id.* at 5–6. She estimated the total cost of these items to be $235.35. *Id.* at 6. Later, at her deposition, Campbell testified that the media listed in her interrogatory answer and the $235.35 figure actually referred to *everything* she had in her possession, not just the "additional" cards she claimed she had to purchase because of Defendants' alleged

"harassment." Campbell Dep. at 156–58. When asked to estimate the amount of additional expenditures she was claiming, Campbell declined to do so at first. *Id.* at 158. Campbell then testified that "maybe one-fourth" of the twenty mini DV tapes she had purchased were a result of Defendants' allegedly harassing conduct. *Id.* at 158–59. The Court finds this evidence sufficient to create a triable issue of fact as to whether Campbell paid extra money for memory cards as a result of Defendants' conduct at the Oakland 2012 incident.

As to the substance of Campbell's UCL "unlawful" claim, the Court has already found a genuine dispute regarding whether the Bane Act (by way of section 43 of the California Civil Code only) and the Ralph Act were violated with respect to Defendants' conduct at the Oakland 2012 incident. As a result, the Court must find a triable issue as to whether the UCL was violated on the basis of those predicate offenses only. The Court therefore DENIES Defendants' summary judgment motion as to Campbell's UCL claim with respect to the Oakland 2012 incident.

As to the Oakland 2010 incident, the only other incident involving Campbell, the Court has already granted summary judgment in Defendants' favor. Because there is no violation of a predicate law, the Court GRANTS Defendants' summary judgment motion with respect to Campbell's UCL claim regarding the Oakland 2010 incident. *See Stokes,* 2014 WL 4359193, at *11 ("If a plaintiff cannot state a claim under the predicate law, however, [the UCL] claim also fails." (internal quotation marks omitted)).

## IV. CONCLUSION

For the foregoing reasons, the Court rules on the parties' summary judgment motions as follows:

- The Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' cause of action arising out of Article I, Section 2(a) of the California Constitution;
- The Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' cause of action arising out of section 527.6 of the California Code of Civil Procedure;
- The Court GRANTS summary judgment in favor of Defendants as to Campbell's cause of action for IIED;
- The Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' Ralph Act cause of action arising out of the Oakland 2010, San Jose 2011, and Fresno 2012 incidents;
- The Court DENIES summary judgment for both parties as to Plaintiffs' Ralph Act cause of action arising out of the Oakland 2012 and San Jose 2012 incidents;
- The Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' Bane Act cause of action predicated on a violation of section 3479 of the California Civil Code;
- The Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' Bane Act cause of action predicated on a violation of the right to use the public streets;
- The Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' Bane Act cause of action predicated on a violation of section 647c of the California Penal Code;
- The Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' Bane Act cause of action predicated on a violation of section 1708 of the California Civil Code;
- The Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' Bane Act cause of action

predicated on violations of Article I of the California Constitution;

- The Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' Bane Act cause of action predicated on a violation of section 43 of the California Civil Code with respect to the Oakland 2010, San Jose 2011, and Fresno 2012 incidents;

- The Court DENIES summary judgment for both parties as to Plaintiffs' Bane Act cause of action predicated on a violation of section 43 of the California Civil Code with respect to the Oakland 2012 and San Jose 2012 incidents;

- The Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' Bane Act cause of action predicated on a violation of the Ralph Act;

- The Court GRANTS summary judgment in favor of Defendants as to Plaintiffs' battery cause of action arising out of the Oakland 2010, San Jose 2011, and Fresno 2012 incidents;

- The Court DENIES summary judgment for both parties as to Plaintiffs' battery cause of action arising out of the Oakland 2012 and San Jose 2012 incidents;

- The Court GRANTS summary judgment in favor of Defendants as to Campbell's assault cause of action arising out of the Oakland 2010 incident;

- The Court DENIES summary judgment for both parties as to Campbell's assault cause of action arising out of the Oakland 2012 incident;

- The Court GRANTS summary judgment in favor of Defendants as to Campbell's UCL claim arising out of the Oakland 2010 incident; and

- The Court DENIES summary judgment for both parties as to Campbell's UCL claim arising out of the Oakland 2012 incident.

The Court also GRANTS Plaintiffs' request for judicial notice, STRIKES any references in the FACC to Dennis, Gillet, and Gorman, DENIES Plaintiffs' Motion for Leave to File a Fifth Amended Complaint, and DENIES Defendants' Motion for Sanctions.

**IT IS SO ORDERED.**